COMMONWEALTH *vs*. DUANE R. SMITH
(and three companion cases[1]).

Suffolk. November 10, 1988. — January 17, 1989.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, NOLAN, & O'CONNOR, JJ.

*Robbery. Assault and Battery by Means of a Dangerous Weapon. Constitutional Law,* Double jeopardy. *Practice, Criminal,* Mistrial, Dismissal, Argument by prosecutor, Instructions to jury.

Retrial of criminal defendants after a mistrial caused by certain remarks in the prosecutor's opening statement was not barred by double jeopardy principles, where there was no evidence that the prosecutor intended to provoke a mistrial or otherwise engaged in "overreaching." [4-5]

At the trial of indictments charging a defendant with armed robbery and assault and battery by means of a dangerous weapon, the prosecutor's statement during closing argument that a certain police officer saw the defendant and a companion "with the wallet of [the victim], which was positively identified," which the defendant claimed misstated the evidence, created no substantial risk of a miscarriage of justice. [5-6]

There was no merit to the contention of a defendant on appeal from his convictions of armed robbery and assault and battery by means of a dangerous weapon that the prosecutor improperly suggested, in his closing argument, that the substance of certain inaudible testimony given by the victim prior to trial was consistent with his trial testimony, where the prosecutor correctly stated the trial evidence. [6]

---

[1] Two against Stanley A. Cargill and one against Duane R. Smith.

The record of a criminal trial did not support a defendant's contention that the prosecutor improperly commented that a prosecution witness would not commit perjury, where the prosecutor was making a fair reply to certain impressions created by defense counsel in closing. [6-7]

At a criminal trial, it was not prejudicial error to allow a prosecutor, in response to a defense attorney's implying that the Commonwealth had withheld evidence, to state legitimately that such evidence had not been withheld and was available to the defendant to produce as well. [7-8]

INDICTMENTS found and returned in the Superior Court Department on January 14, 1985.

The cases were tried before *Robert A. Mulligan*, J.

The Supreme Judicial Court granted a request for direct appellate review.

*Jane Larmon White,* Committee for Public Counsel Services (*John J. Connell* with her) for the defendant.

*David B. Mark,* Assistant District Attorney, for the Commonwealth.

LIACOS, J.    The defendants challenge their convictions of armed robbery and assault and battery by means of a dangerous weapon.[2] There were two trials. In the first trial, the defendants successfully moved for a mistrial after the prosecutor's opening statement to the jury. Prior to the second trial, motions to dismiss based on a claim of double jeopardy were denied. The defendants assert error, claiming that the second trial should have been barred. The defendant Smith also claims that errors in the second trial require a reversal of his convictions.[3] We granted the defendant Smith's application for direct appellate review. We hold that retrial of the defendants was not barred. In addition, there was no error in the second trial. Thus, we affirm the defendants' convictions.

---

[2] The trial judge allowed the defendant Cargill's motion to sever an indictment charging carrying a weapon on his person when arrested on a warrant.

[3] The defendant Cargill argues error only in the denial of a motion to dismiss based on double jeopardy principles. In this regard, he argues only Federal law under the Fifth and Fourteenth Amendments to the United States Constitution. Smith argues double jeopardy under both Federal and State law. Cargill does not join Smith's argument as to alleged errors in the course of the second trial. Neither defendant argues that the evidence in the second trial was insufficient to warrant the verdicts.

We summarize the facts as the jury could have found them. Shortly after 1:30 A.M. on October 16, 1984, on the stairway connecting City Hall Plaza to Congress Street in Boston, Raymond A. Ambrose was knocked to the ground and forced at knifepoint to give his wallet, watch, change, and automobile keys to two assailants. He could see that his assailants were two black males, one of whom had lighter skin than the other. Ambrose noted that the man wielding the knife had short hair and darker skin, while the other man, who was pulling Ambrose's right arm, wore a dark hat. Ambrose also could see that the knife at his neck had a large, shiny, sharp tip and a single-edged blade. The assailant with the knife said, "Give us your money . . . or I will kill y[ou]." Ambrose replied, "Don't kill me. If you want m[y] money, take my money." The other assailant demanded that Ambrose hand over his wallet, watch, and change. Ambrose did so, and with his change he handed over the keys to his automobile. The man with the knife then warned Ambrose to "be still" and "make no noise." The assailants fled up the stairs to City Hall Plaza. Shortly thereafter, Ambrose located Officer James J. Farrell of the Boston police department, and they drove around the neighborhood looking for the assailants.

At about 2 A.M., a uniformed Boston police officer, John Pells, was working a paid detail guarding a nearby construction site. He saw a Federal detective service automobile being driven down the street into an alley. Then he saw two black men running into the alley, and, when they saw the Federal vehicle, they ran out of the alley. Officer Pells followed those men in his automobile and eventually drove up to within a few feet of them. Pells saw that one of the men, whom he later identified as the defendant Smith, was carrying a "wallet in his hand with money sticking up out of it."[4] Being unaware of the alleged robbery, Pells did not arrest the men at that time. He left the two men and encountered Officer Farrell at City Hall Plaza.

---

[4] Officer Pells identified the wallet at trial. Also, this wallet was identified at trial by Ambrose as his.

Farrell informed Pells of the alleged robbery, and the two officers drove back toward the area where Pells had spoken with the two men. Pells spotted the men in front of the State House heading toward the Boston Common. As Pells asked the men to approach him, a Boston police wagon arrived. When Pells told the officers in the wagon to arrest the defendant Smith, the other man, the defendant Cargill, ran into the Boston Common. The defendant Cargill was arrested shortly thereafter on the Common. A search of the area produced a knife, identified by Ambrose as similar to the one he had observed at his neck. Finally, a search of the alley where Pells had first seen the two men produced the keys to Ambrose's automobile.

1. *Double jeopardy.* At the defendants' first trial, they objected to three remarks in the prosecutor's opening statement. First, the prosecutor identified the wrong defendant as the one who had threatened to kill Ambrose if he did not hand over his money. Second, the prosecutor stated that the defendants were the two men whom Ambrose had seen following him shortly before the incident, although Ambrose had been unable to identify the defendants positively as those men. Third, the prosecutor stated that Pells had seen the defendants running past the State House and toward the Common, when in fact Pells's testimony would suggest that the defendants had been walking. Based on these three remarks, the defendants moved for a mistrial. The judge granted the motion. The second trial began immediately. Just prior to the empanelment of the second jury, the defendants moved to dismiss the indictments based on double jeopardy grounds. That motion was denied.

Under Federal law, a defendant who moves for a mistrial must show that the prosecutor intended to provoke a mistrial or otherwise engaged in "overreaching" or "harassment." *Oregon* v. *Kennedy,* 456 U.S. 667, 683 (1982) (Stevens, J., concurring). *Commonwealth* v. *Lam Hue To,* 391 Mass. 301, 310-312 (1984). As we have noted, the standard for barring a retrial based on double jeopardy principles is substantially the same under Massachusetts law. *Commonwealth* v. *Andrews,* 403 Mass. 441, 447 n.6, 449 (1988). *Gallinaro* v. *Commonwealth,* 362 Mass. 728, 736 (1973). There was no finding by

the judge that the prosecutor had intended to provoke a mistrial, nor does the record reveal such intent. See *Andrews, supra* at 448. The defendants assert, on appeal, what they claim could be a plausible reason why the prosecutor may have wished to "goad" the defendants to move for a mistrial. They contend that the prosecutor may have wanted fewer black jurors than at the first trial. In support of this argument, the defendants cite the judge's caution, prior to ruling on the motion for mistrial: "You may not have as many Blacks on the jury as you have now . . . ." However, the defendants give no indication what was the racial composition of the first jury. The defendants also present no evidence to support their claim of racial bias on the part of the prosecutor. Cf. *Commonwealth v. Soares*, 377 Mass. 461, 473-474 n.8, 489-492, cert. denied, 444 U.S. 881 (1979) (defendants carefully laid foundation for appeal regarding racially motivated use of peremptory challenges). Nor did they make such a claim before the trial judge in the affidavit filed in support of the motion to dismiss. There being no evidence of prosecutorial overreaching, the defendants have not shown that their retrial was barred on double jeopardy grounds. There was no error in the denial of the motions to dismiss.

2. *Second trial.* The defendant Smith claims four errors in the second trial. First, the defendant claims that the prosecutor misstated evidence when he said, in his final argument, that Officer Pells saw the defendants "with the wallet of Mr. Ambrose, which was positively identified." The defendant admits that there was no timely objection. We review the assertion of error under the standard whether there was a substantial risk of a miscarriage of justice. *Commonwealth v. Freeman*, 352 Mass. 556, 563-564 (1967). The defendant claims that there was no evidence that the wallet was not his own. This ignores the testimony of Ambrose and Officer Pells identifying the wallet. We consider the claim in the context of the entire argument and the evidence at the trial in light of the judge's instruction to the jury. *Commonwealth v. Lamrini*, 392 Mass. 427, 432 (1984). The defendant's claim that Pells had seen Ambrose's wallet in the possession of two men other than the

defendants goes to the weight of the evidence but does not prevent the prosecutor from arguing from the evidence favorable to his case. *Commonwealth* v. *Ferreira,* 381 Mass. 306, 316 (1980). There was no impropriety in this aspect of the argument.

Second, the defendant claims that the prosecutor improperly suggested, in his closing argument, that the substance of inaudible testimony given by Ambrose prior to trial was consistent with his trial testimony. At trial, Ambrose testified that one of his assailants had lighter skin than the other. Ambrose was asked on cross-examination whether, at a probable cause hearing, he had stated, "I couldn't tell if they [his assailants] were light or dark." Ambrose could not recall the statement, but agreed that he must have made it. At the probable cause hearing, Ambrose was also asked, "[T]hat is about as precise as you can be?" His answer was transcribed as "inaudible," and Ambrose testified that he could not recall his answer. In closing argument at trial, the prosecutor argued why Ambrose should be believed and stated, "[W]e don't have the answer he gave then [but] [w]e have the answer he gave now." The defendant, relying on *Commonwealth* v. *Kozec,* 399 Mass. 514, 522 (1987), argues that the prosecutor's statement was improper because it was "unsupported by the evidence and thus [was] speculative and conjectural." The defendant ignores the rule that counsel is "entitled to summarize the evidence and to draw fair inferences from it." *Commonwealth* v. *Andrews,. supra* at 457. In *Kozec,* the argument held improper was based on matters not in evidence or on unfair inferences. Here, the prosecutor correctly stated the evidence. The prosecutor's reliance on Ambrose's testimony at trial was proper. There was no impropriety in this aspect of the closing argument.

Third, the defendant argues that the prosecutor improperly commented that Officer Pells would not commit perjury. The defendant argues that the prosecutor cast the issue as one of perjury, to the exclusion of the possibility that Pells made an honest mistake. The record does not support this contention. Counsel for the defendant Cargill stated, in his closing argument, that Pells's testimony had been contradicted by state-

ments attributed to him by Officer Farrell and that the Commonwealth's version of the facts, "if you believe Officer Pells," would be "absurd." The prosecutor responded, in his own summary, that, whereas counsel for the defendant Smith "gave some outs to him [Officer Pells]," counsel for the defendant Cargill "was trying to give the inference that [Officer Pells] . . . perjured himself." Thus, the prosecutor carefully limited his argument to rebut only the suggestion of the defendant Cargill's counsel that Pells committed perjury. The prosecutor is entitled to make a fair reply to the defendant's closing argument. *Commonwealth* v. *DeJesus,* 17 Mass. App. Ct. 1020, 1021-1022 (1984), and cases cited. See *Commonwealth* v. *Earltop,* 372 Mass. 199, 206 (1977) (Hennessey, C.J., concurring).

Fourth, the defendant claims that the prosecutor improperly placed the burden on the defendants to produce evidence. Counsel for the defendant Smith commented, in his closing argument to the jury, "I don't see the money [taken from the defendant Smith upon arrest] anywhere. . . . [W]ouldn't it help you in your determination of this case if there was, as Mr. Ambrose told you was taken from [him], one twenty, two tens, and several ones in that batch?" The prosecutor responded, in his closing argument, "Was there any reason [defense counsel] couldn't have asked for [the money], or put it into evidence himself? Was there? No." Ordinarily, it is improper for the prosecutor to comment on the failure of the defense to present certain evidence. *Commonwealth* v. *Borodine,* 371 Mass. 1, 9 (1976), cert. denied, 429 U.S. 1049 (1977). However, we have held also that it is not prejudicial error to allow a prosecutor to correct an erroneous impression for which the defendant himself is responsible. *Commonwealth* v. *Smith,* 342 Mass. 180, 186 (1961). Furthermore, where a defendant implies that the Commonwealth has withheld evidence, the prosecutor may state legitimately that such evidence has not been withheld or was available to the defendant as well. *Id.* at 186-187. *Commonwealth* v. *Leo,* 379 Mass. 34, 42 (1979).

The defendant's citation to *Commonwealth* v. *Gilmore,* 399 Mass. 741, 744-746 (1987), misses the mark. In that case, the

judge twice interrupted defense counsel's closing argument, which commented on the failure of the Commonwealth to produce certain evidence, to instruct the jury that they were to consider only the "evidence introduced in fact in this case." *Id.* at 744-745 n.1, 746. "Not only did the judge prevent defense counsel from pursuing a permissible line of argument, but he also in effect invaded 'the province of the jury to decide what inferences to draw from certain evidence.'" *Id.* at 746, quoting *Commonwealth* v. *Bowden,* 379 Mass. 472, 486 (1980). No such conduct is present in this case. To the contrary, the judge properly permitted both the defense counsel and the prosecutor to argue as to the evidence and the fair inferences from the evidence. *Commonwealth* v. *Leo, supra.* Additionally, the judge gave proper instructions as to the burden of proof and to the effect that opening and closing arguments are not evidence. There was no reversible error. *Commonwealth* v. *Storey,* 378 Mass. 312, 324 (1979).

*Judgments affirmed.*