JESUS M. MERCEDES vs. COMMONWEALTH.

Suffolk.    September 12, 1989. — October 12, 1989.

Present: LIACOS, C.J., WILKINS, NOLAN, & O'CONNOR, JJ.

*Controlled Substances. Practice, Criminal*, Double jeopardy, Mistrial. *Constitutional Law*, Double jeopardy. *Supreme Judicial Court*, Superintendence of inferior courts.

At a criminal trial, the evidence was sufficient to permit the trier of fact to find beyond a reasonable doubt the essential elements of the crime of possession of cocaine with intent to distribute. [693-694]

Double jeopardy principles did not bar retrial of a criminal defendant after a mistrial caused by certain remarks by a prosecution witness, where the record did not indicate that the prosecutor intended to provoke a mistrial or otherwise engaged in "overreaching" or "harassment," and where, in fact, it was defense counsel who was responsible for the witness's statement which resulted in the mistrial. [694-696]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on November 9, 1988.

The case was considered by *Lynch*, J.

*Charles P. Ball* for the plaintiff.

*Katherine E. McMahon*, Assistant District Attorney, for the Commonwealth.

NOLAN, J. We affirm the action of a single justice of this court in denying the petition of Jesus M. Mercedes (defendant) for relief under G. L. c. 211, § 3 (1988 ed.). The two issues posed are: (1) Was the evidence of guilt sufficient as matter of law, and (2) do double jeopardy principles bar the retrial of the defendant?

1. *Sufficiency of evidence.* At the trial of the defendant on an indictment charging possession of cocaine with intent to distribute (G. L. c. 94C, § 32A [1988 ed.]), there was evidence of a supply of cocaine in a store, the keys to which the defendant had in his possession, and a balance scale in the defendant's

apartment. The defendant acknowledged that the cocaine was his and that he had placed it under a stair in the store's cellar where it was seized. He had in his possession a substantial amount of money when apprehended. Viewing the evidence in the light most favorable to the Commonwealth, a "rational trier of fact could have found the essential elements" of the crime of possession of cocaine with intent to distribute beyond a reasonable doubt. *Berry* v. *Commonwealth*, 393 Mass. 793, 794 (1985).

2. *Double jeopardy.* After the defense rested, the Commonwealth recalled a rebuttal witness, a State trooper who had testified during the presentation of the Commonwealth's case-in-chief. The purpose of the recall was to elicit evidence contradicting the direct testimony of a witness on the issue of the defendant's residence in the apartment where the scale was seized. The trooper testified that the witness had told him on the day of the search that the defendant had been living at the apartment for about one month.[1] On cross-examination defense

---

[1] The transcript yields the following relevant colloquy:

THE PROSECUTOR: "And were you ever part of the Great Brook Valley Task Force?"

THE WITNESS: "When the Great Brook Valley Task Force was initiated by the District Attorney, I was one of the first members assigned. I had an active investigation almost on a daily basis in the Great Brook Valley section of Worcester for approximately one and a half years."

THE JUDGE: "Counsel, can I just see you for a moment?"

(BENCH CONFERENCE:

THE JUDGE: "What is this all about?"

THE PROSECUTOR: "The young girl testified as to his residing at Chino Avenue every six months for three weeks. I want to ask the witness whether or not he saw him —"

THE JUDGE: "You want to establish that he was down there."

THE PROSECUTOR: "That he was down there, and that he lived there."

THE JUDGE: "Okay."

DEFENSE COUNSEL: "Judge, it's being introduced by way of this trooper testifying that he is a member of the Great Brook Valley Task Force with all kinds of innuendo."

THE JUDGE: "Maybe I can do something in the instruction to cure that, but I think you do have a valid point in terms of rebuttal, so keep it to that subject matter."

END OF BENCH CONFERENCE)

THE PROSECUTOR: "While you were down in the Great Brook Valley area, did you ever see the defendant down there?"

counsel drew from the trooper that he had previously stopped the defendant because of his driving behavior, and then the following colloquy ensued: Q.: "It's fair to say that you never stopped and talked to Mr. Jesus Mercedes pursuant to any type of drug investigation whatsoever; that's the truth, right?" A.: "No, sir."

THE WITNESS: "On numerous times I have." ·

THE PROSECUTOR: "And approximately how many times?"

THE WITNESS: "Perhaps in excess of fifty."

THE PROSECUTOR: "And did you know where he was living at that time?"

THE WITNESS: "Yes, ma'am, I do."

THE PROSECUTOR: "And where was that?"

THE WITNESS: "At the time dating back approximately three years from today's testimony until approximately the last year and a half, I've known him to often park his vehicle and reside at 81 Chino Ave. On several occasions I have stopped and spoke with [the defendant]. He —"

DEFENSE COUNSEL: "Objection, your Honor. Can I have a side bar?"

(BENCH CONFERENCE:

DEFENSE COUNSEL: "Motion for a mistrial, your Honor."

THE JUDGE: "Can this be cured with respect to anything? If he was asked by [defense counsel] for example, to try and deal with this, the reason he stopped this fellow. What reason? In other words, it's not in his official function."

THE PROSECUTOR: "Well, police officers talk to everybody."

THE JUDGE: "Right. In other words it should be made clear. That's why I called you over the first time, just to make sure that [defense counsel] can establish on cross that it was contact with him strictly like a police officer would have with any other citizen on the block, not because he's involved in a drug investigation. If that's the situation, I'll grant a mistrial. If it isn't —"

DEFENSE COUNSEL: "Judge, I think that's definitely the situation."

THE JUDGE: "Is that the situation?"

DEFENSE COUNSEL: "This case is gone."

THE PROSECUTOR: "I don't believe so. He's just going to testify that he saw him. At least that's what he told me yesterday."

DEFENSE COUNSEL: "He testified that he stopped him on several occasions."

THE JUDGE: "What I'm going to do is this: I'm going to let you try your case, both of you, and the chips will fall wherever they may. All I'm saying is if it comes out that his knowledge of his being there has more to do with his being around the area and saying hello and so forth, I think it's still a live issue for the jury, and there's no prejudice. But if it comes out to the effect that he was investigating him at the Valley, of course I'll grant a mistrial."

THE PROSECUTOR: "Can we take a minute recess so I can talk to the trooper and tell him not to?"

THE JUDGE: "No."

The defendant then moved for a mistrial which the judge allowed. The defendant argues that double jeopardy bars retrial after a mistrial has been declared. Under both Federal and Massachusetts law, the protection against double jeopardy bars a retrial after a mistrial is declared on a defendant's motion if "the prosecutor intended to provoke a mistrial or otherwise engaged in 'overreaching' or 'harassment.'" *Commonwealth* v. *Smith*, 404 Mass. 1, 4 (1989). In this instance, there was no such misconduct. In fact, it was the defendant who was responsible for the State trooper's statement which resulted in the mistrial. There is no bar to a retrial.

The order of the single justice denying relief is affirmed.

*So ordered.*

---

DEFENSE COUNSEL: "I would object to that, Judge."
                        END OF BENCH CONFERENCE)
THE PROSECUTOR: "Did you also see him at the store at any time?"
THE WITNESS: "Which store is that, ma'am?"
THE PROSECUTOR: "The one at 711 Main Street."
THE WITNESS: "On several occasions prior to the date of the execution of the warrant, I would say approximately only twice, two to three times, I'm not sure which, at that store, within the one week preceding Trooper Ford's execution of the search warrant."
THE PROSECUTOR: "I have no further questions."
THE JUDGE: "You may inquire, [defense counsel]."
                    FURTHER RECROSS-EXAMINATION
DEFENSE COUNSEL: "Now you testified that you'd seen Jesus Mercedes in the Great Brook Valley area, is that correct?"
THE WITNESS: "That's correct."
DEFENSE COUNSEL: "And you testified that you stopped him and talked to him on a couple of occasions."
THE WITNESS: "Yes, sir."
DEFENSE COUNSEL: "And that had absolutely nothing to do with the investigation of any drug cases, isn't that right?"
THE WITNESS: "On the last occasion it was because of his driving behavior. At which time he produced an expired license."
THE JUDGE: "Officer, could you just answer the question that [defense counsel] —"
THE WITNESS: "I'm trying to recall the reasons for the stop."
THE JUDGE: "Take your time."
DEFENSE COUNSEL: "It's fair to say that you never stopped and talked to [the defendant] pursuant to any type of drug investigation whatsoever; that's the truth, right?"
THE WITNESS: "No, sir."