JOSEPH PORETTA *vs.* COMMONWEALTH.

Suffolk. February 5, 1991. - April 10, 1991.

Present: LIACOS, C.J., WILKINS, LYNCH, & O'CONNOR, JJ.

*Practice, Criminal*, Double jeopardy, Mistrial. *Constitutional Law*, Double jeopardy.

In a criminal case in which a mistrial was granted on the motion of the defendant's counsel, allegedly without the defendant's knowing, intelligent and voluntary assent, retrial was not barred by either Federal or State double jeopardy principles. [766-769]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on April 30, 1990.

The case was considered by *Nolan*, J.

*Thomas B. Vawter* for the plaintiff.

*Robert J. Bender*, Assistant District Attorney (*George M. O'Connor*, Assistant District Attorney, with him) for the Commonwealth.

LYNCH, J. During the trial of codefendants Joseph Poretta, Kim Sullivan, and Robert J. Carr, for possession of cocaine with intent to distribute and trafficking in cocaine (G. L. c. 94C, §§ 32A, 32E [1988 ed.]), a Superior Court judge declared a mistrial on Poretta's motion. Poretta subsequently moved to dismiss the indictment on the ground that retrial was barred by double jeopardy principles under both State and Federal law. Another Superior Court judge denied the motion. Poretta then sought similar relief before a single justice of this court pursuant to G. L. c. 211, § 3 (1988 ed.). The single justice denied his petition and the defendant appeals. We affirm the single justice's decision.

At trial, the Commonwealth introduced the eyewitness testimony of two Salem police officers from which the jury could have found the following facts. Robert Carr agreed to

sell cocaine to an undercover police officer, who met Carr for that purpose in a Salem parking lot at 7:20 P.M. on August 18, 1988. While sitting in the officer's unmarked vehicle, the officer gave Carr $1,600, whereupon Carr got out of the vehicle saying, "My connection is around the corner. I have to go give them the money." Carr walked across the street and approached a pickup truck operated by Poretta. Kim Sullivan was in the passenger seat of the truck. Carr handed the cash to Poretta, conversed with Poretta briefly, then returned to the undercover officer's vehicle. Carr instructed the officer to "just drive around," which they did for approximately ten minutes before pulling into the parking lot behind a "fast food" restaurant in Salem. The pickup truck entered the lot behind them and then parked in an adjacent lot. Carr again approached the truck, spoke with Poretta (whom the undercover officer recognized from past dealings) and Sullivan, and put his hands in the truck. He then returned to the officer's car and handed the officer a bag containing cocaine.

Carr testified in his own defense. On cross-examination, he absolved Sullivan and Poretta of any complicity in the drug transaction (although he admitted that, by coincidence, they were also at the scene) and implicated another individual as the cocaine supplier.

After Carr related his version of the events, Sullivan's attorney asked to be heard at sidebar. There Sullivan's attorney stated that Carr's testimony was "at complete variance" with his earlier statement of the facts in a discussion among Carr and the attorneys representing Carr, Poretta, and Sullivan.[1] Noting that he brought this issue to the judge's attention "in my capacity as an officer of the court" and "to protect my client's rights," Sullivan's attorney moved for a mistrial. Poretta's lawyer adopted these statements and joined in the motion for mistrial. The Commonwealth objected, offering that Carr could be "rehabilitated" on redirect examination, but Poretta's attorney argued that Carr's testimony would "compound what I conceive as prejudice and

---

[1] Poretta's counsel for this appeal did not represent him at trial.

confusion in the minds of the jurors against my client and Miss Sullivan." The judge granted the motions for mistrial with respect to Sullivan and Poretta based in part on the possibility of prejudice to their defenses.[2] Trial of Carr resumed with redirect examination.

Poretta then filed a motion to dismiss the indictment arguing that retrial was barred by State and Federal double jeopardy principles. In an accompanying affidavit he stated that his attorney never consulted with him before requesting the mistrial and that the implications of a mistrial were never explained to him.[3] He further asserted: "I thought Robert Carr's testimony was helpful to my case because he told the jury that I was not involved with the drug deal for which I was being charged." A Superior Court judge denied Poretta's motion, ruling that the attorney's "tactical decision" to request a mistrial "did not require the personal consent of Poretta in order to avoid violation of the Double Jeopardy Clause."

Under both Federal and Massachusetts law, the protection against double jeopardy does not bar retrial after a mistrial is declared on a defendant's motion, absent prosecutorial misconduct intended to provoke the defendant to move for a mistrial. See *Oregon* v. *Kennedy*, 456 U.S. 667, 679 (1982); *Mercedes* v. *Commonwealth*, 405 Mass. 693, 696 (1989); *Commonwealth* v. *Sanchez*, 405 Mass. 369, 373-374 (1989). Poretta does not allege that the prosecutor intentionally goaded him into moving for a mistrial in this case, however. In fact, the prosecutor opposed the motion.

---

[2] In declaring the mistrial, the judge noted in part: "[A]s I listened to the testimony of Carr, I believe, and I find, that the jury could adopt a position which would be prejudicial to Sullivan and Poretta. The testimony, in my view — and I am not the finder of fact here — might well be viewed by the jury as untrue when weighed against the testimony of the officers in the case. Should the jury adopt such a view, it would be to the detriment of Sullivan and Poretta."

[3] The affidavit states in part: "At no point did my attorney ever tell me that he had asked the court for a mistrial. I was never asked if I wanted a mistrial or explained what would happen if a mistrial occurred."

Rather, Poretta contends that this mistrial motion consti-
tuted a waiver of his right not to be placed twice in jeopardy,
and that such a waiver must satisfy the "knowing, intelligent,
and voluntary" standard established by the United States
Supreme Court in *Johnson* v. *Zerbst*, 304 U.S. 458 (1938).
Thus, Poretta claims, the trial judge was obligated to inquire
either of Poretta's lawyer or of Poretta himself whether he
assented to the motion for mistrial. Because the judge failed
to conduct such a colloquy, Poretta concludes that his
"waiver" of the protection against multiple prosecutions was
invalid. Therefore, Poretta suggests, retrial should be permit-
ted only if the mistrial was justified by "manifest necessity,"
the exacting standard governing retrial after a mistrial is
granted over the defendant's objection. See *Kennedy, supra*
at 672. We disagree.

The Supreme Court has squarely rejected the argument
that a defendant's mistrial motion must be knowing, intelli-
gent, and voluntary in order for a retrial to be permissible
under the double jeopardy clause of the Fifth Amendment to
the United States Constitution. *United States* v. *Dinitz*, 424
U.S. 600, 609-610 n.11 (1976). Following the Court's ruling
in *Dinitz*, there can be no doubt that the Federal Constitu-
tion does not condition the permissibility of retrial on the de-
fendant's personal, explicit assent to a mistrial motion
brought by his attorney. E.g., *United States* v. *Smith*, 621
F.2d 350, 352-353 n.3 (9th Cir. 1980), cert. denied, 449 U.S.
1087 (1981); *United States* v. *Bobo*, 586 F.2d 355, 363-365
(5th Cir. 1978), cert. denied sub nom. *Rowan* v. *United
States*, 440 U.S. 976 (1979).[4]

---

[4]*Walker* v. *Lockhart*, 620 F.2d 683 (8th Cir. 1980), cert. denied, 449
U.S. 1085 (1981), on which Poretta relies, is inapposite. In that case, the
court found that the trial judge granted a mistrial motion made on the
defendant's behalf knowing that the defendant had expressed opposition to
the motion. *Id.* at 687. In ruling that counsel was not entitled to waive a
constitutional right under the facts of that case, the *Walker* court relied on
*Brookhart* v. *Janis*, 384 U.S. 1 (1966). See *Walker, supra* at 686-687.
*Brookhart* stands for the narrow proposition that counsel does not have the
"power to enter a [guilty] plea which is inconsistent with his client's *ex-
pressed* desire and thereby waive his client's constitutional right" to con-

Therefore, Poretta's argument reduces to an invitation to this court to create such a requirement under the double jeopardy principles of Massachusetts law. We decline to do so. We have held that the standard for barring retrial on double jeopardy grounds is "substantially the same" under Federal and Massachusetts law. *Commonwealth* v. *Smith,* 404 Mass. 1, 4 (1989). We see no reason to depart from this guideline here because we agree with the balancing of interests embodied in the Federal rule.

The case law defining the ban on double jeopardy, in broad strokes, represents an accommodation of the defendant's interest in avoiding oppressive multiple prosecutions and the public interest in just results. See *Commonwealth* v. *Andrews,* 403 Mass. 441, 447-448 (1988), quoting *Kennedy, supra* at 682-683 (Stevens, J., concurring). Thus, the defendant's interests "must be balanced against society's interest in affording the prosecutor one full and fair opportunity to present his evidence to the jury." *Kennedy, supra* at 682 (Stevens, J., concurring). We conclude that a requirement that the defendant personally and knowingly consent to a mistrial motion brought on his behalf would weigh too heavily in favor of the defendant.

A mistrial is not always inimical to the defendant's interests. "In the event of severely prejudicial error a defendant might well consider an immediate new trial a preferable alternative to the prospect of a probable conviction followed by an appeal, a reversal of the conviction, and a later retrial." *Dinitz, supra* at 610. "In such circumstances, a defendant's mistrial request has objectives not unlike the interests served by the Double Jeopardy Clause — the avoidance of the anxiety, expense, and delay occasioned by multiple prosecutions." *Id.* at 608.

In this light, a defendant's motion for mistrial is distinguishable from the waiver of a constitutional right, such as

front the witnesses against him (emphasis added). *Id.* at 7. The instant case is factually distinguishable from both *Walker* and *Brookhart,* because here the defendant never expressed his opposition to his attorney's motion for mistrial.

the right to counsel, which must satisfy the "knowing, intelligent, and voluntary" standard. See *Johnson* v. *Zerbst*, 304 U.S. 458 (1938). While a mistrial may promote the defendant's interest in avoiding double jeopardy, a waiver by definition subverts the relevant constitutionally protected interests of the defendant.[5] For this reason, we too reject the analogy between a defendant's mistrial request and the waiver of a constitutional right. Accord *Dinitz, supra* at 609 & n.11.[6]

In addition, the defendant's argument undervalues the State's legitimate prosecutorial interest. A fundamental goal underlying the protection against double jeopardy is to safeguard against too-zealous use of the State's accusatory power by prohibiting the State from making repeated attempts to convict an individual for the same offense. See *Green* v. *United States*, 355 U.S. 184, 187-188 (1957). The concern in this case is not the State's relentless pursuit of Poretta, however, but Poretta's claim that his attorney erred by letting exculpatory testimony slip away before consulting with him. If the lack of a knowing waiver were a bar to retrial in these circumstances, the State would be deprived of its right to "one complete opportunity to convict those who have violated its laws," *Arizona* v. *Washington*, 434 U.S. 497, 509 (1978), without a hint of governmental misconduct or overreaching. See *United States* v. *Bobo, supra* at 364, quoting *United States* v. *Jamison*, 505 F.2d 407, 413 (D.C. Cir. 1974).

---

[5]Thus, the Supreme Court in *Dinitz* concluded: "[T]raditional waiver concepts have little relevance where the defendant must determine whether or not to request or consent to a mistrial in response to judicial or prosecutorial error. . . . The important consideration, for purposes of the Double Jeopardy Clause, is that the defendant retain primary control over the course to be followed in the event of such error." *Dinitz, supra* at 609.

[6]Under this analysis, it is of little consequence that in this particular case the declaration of a mistrial arguably harmed Poretta's interests by denying him the benefit of Carr's exculpatory, albeit perjurious, testimony. We note, however, that both the trial judge and the motion judge found that the mistrial served Poretta's interests. The trial judge found, in part, that the jury might view Carr's testimony as untrue and that this conclusion would prejudice their evaluation of Poretta's credibility. See note 2, *supra.*

That sacrifice of the State's interest is too great, and the corresponding benefit to the defendant's double jeopardy interests too small, to justify the rule for which Poretta argues. We hold that, under Massachusetts law, the permissibility of reprosecution of a defendant following the defendant's successful motion for mistrial does not depend on whether the motion satisfied the "knowing, intelligent, and voluntary" standard of *Johnson* v. *Zerbst*, 304 U.S. 458 (1938). The double jeopardy clause of the Fifth Amendment imposes no such requirement. *Dinitz, supra* at 609 n.11. Therefore, the declaration of a mistrial in this case on Poretta's motion does not bar a second trial.

*Judgment affirmed.*