## COMMONWEALTH VS. ALVIN COBB.

No. 97-P-491.

Suffolk. April 14, 1998. - July 31, 1998.

Present: KASS, SMITH, & JACOBS, JJ.

*Constitutional Law,* Double jeopardy. *Practice, Criminal,* Double jeopardy, Conduct of prosecutor, Instructions to jury, Reasonable doubt, Presumptions and burden of proof, Duplicative convictions. *Kidnapping.*

Principles of double jeopardy did not bar the retrial of a criminal case after a mistrial, where there was no finding, or showing on the record, that the prosecutor intentionally provoked the defendant into moving for a mistrial. [274-275]

At a criminal trial, the judge's instructions on reasonable doubt and the Commonwealth's burden of proof, viewing the jury instructions as a whole, adequately conveyed the measure of certainty required for conviction. [275]

Evidence at a criminal trial concerning a kidnapping charge was sufficient to support the defendant's conviction of that offense apart from the evidence supporting home invasion and armed robbery offenses, and the kidnapping conviction was not duplicative. [275-276]

INDICTMENT found and returned in the Superior Court Department on October 6, 1994.

The case was tried before *James F. McHugh, III,* J.

*Stephen Neyman* for the defendant.

*Linda M. Poulos,* Assistant District Attorney, for the Commonwealth.

SMITH, J. On October 6, 1994, a Suffolk County grand jury returned an indictment against the defendant charging him with (1) kidnapping, (2) armed robbery, (3) assault and battery by means of a dangerous weapon (two counts), and (4) armed home invasion. On June 13, 1995, trial began before a Superior Court judge and a jury. Shortly after the trial started, the judge allowed the defendant's motion for a mistrial.

On August 24, 1995, a new trial commenced. The jury

returned guilty verdicts on all counts of the indictment. On appeal, the defendant claims that (1) retrial was barred on double jeopardy grounds; (2) the trial judge's allegedly improper instructions on reasonable doubt created a substantial risk of a miscarriage of justice; and (3) the judge committed error by not dismissing the kidnapping charge on the basis that it was duplicative of the armed robbery and home invasion charges.

There was evidence from which the jury could find the following facts. In September, 1993, the victim and his live-in girlfriend, Marilyn Gooding, ended their relationship and the victim moved to a one-room apartment in the Roxbury section of Boston. From September, 1993, to July, 1994, the victim saw Gooding three or four times on the street. On one occasion, she told him that she was staying at 2 Waverly Street. In May, 1994, the victim saw Gooding across the street from that address with a heavy-set, bald man, whom the victim later identified as the defendant.

On July 31, 1994, Gooding telephoned the victim and told him that she wanted to talk and that she had something for him. The victim agreed to see her. At approximately 11:50 P.M., Gooding arrived at the victim's room. Gooding explained that she was hot and needed something to drink, at which point the victim directed her to the refrigerator. Gooding took out a bottle of water and promptly left the victim's apartment.

About five minutes later, the victim's doorbell rang twice.[1] Shortly afterwards, two men, including a person later identified by the victim as the defendant, burst into the victim's room.[2] The defendant, who was wielding a knife, told the victim to give him his money. He pushed the victim up against a wall and put the knife to the victim's throat. Again, the defendant demanded money, but the victim denied having any.

The defendant then told the victim to lie on his stomach and put his hands behind his back. At that point, Gooding returned. The second man, who was standing at the door, told her to

[1] There were two locked doors at the entrance to the building. When a visitor rang the doorbell, a resident ordinarily would have to go downstairs to open the locked doors to let that person inside.

[2] It was the Commonwealth's theory at trial that Gooding was engaged in a joint venture with the defendant and the other man to rob the victim and that, upon leaving the victim's room, she went downstairs and opened the locked doors to allow the defendant and his companion to enter the building and, subsequently, to break into the victim's room.

come in, shut up, and sit down. The defendant pressed his knee into the victim's back and tied the victim's arms and legs with bed sheets. The defendant also tied a piece of the sheet over the victim's mouth, blindfolded him, and threw a blanket over his head. During this process, the defendant pointed his knife to the victim's head and told him not to say anything or he "would stick him." While the victim's head was covered, one of the two men hit him twice with an iron.

After all three left, taking with them the victim's video cassette recorder and stereo, the victim freed himself and telephoned the police. He told the police that he recognized one of the men as Gooding's current boyfriend, referring to the defendant. The victim was taken to a hospital, where he was treated for his injuries. The following month, the defendant was arrested.

1. *Double jeopardy question.* At the first trial, in order to counter the Commonwealth's evidence that the defendant knew Gooding and, indeed, had lived with her at the Waverly Street address, the defendant called Willie Springs as a witness. She testified that she lived on Moreland Street in Roxbury with her uncle, her mother, and the defendant. According to the witness, the defendant had "always lived with us." The witness specifically stated that the defendant lived at her address during "June, July, August, into September, 1994," when he was arrested. The witness also stated that Gooding had never stayed at the Moreland address and that she had never before seen her.

On cross-examination, the witness testified that the defendant had been living alone at the Waverly Street address until May, 1994. In response to a question of the prosecutor, the witness testified that the defendant had lived with her before he lived on Waverly Street. The prosecutor then asked, "When he did not live with you, where did he live?", to which the witness responded, "He was incarcerated for fifteen years." The judge immediately called the lawyers to a sidebar conference and inquired whether defense counsel intended to file a motion for a mistrial. Defense counsel responded affirmatively and the judge excused the jury.

The judge then said to the prosecutor, "This is major league stuff. This is not amateur hour. I saw [the answer in response to the prosecutor's question] coming from downtown. . . ." The prosecutor responded that he was not trying to elicit information concerning the defendant's prior incarceration, but rather

that he had evidence that the defendant had lived at four different addresses during the relevant period, and by asking the question he was attempting to show that the witness did not know where the defendant lived.

The judge decided that he did not have any alternative but to declare a mistrial because "there is a very strong case against the defendant, extremely strong," and a curative instruction would not eliminate the prejudice in the answer.[3]

On appeal, the defendant argues that his counsel at the second trial should have objected to the retrial on double jeopardy grounds. In particular, he claims that retrial was barred because the prosecutor at the first trial intentionally goaded the defendant into moving for a mistrial.

"Under both Federal and Massachusetts law, the protection against double jeopardy does not bar retrial after a mistrial is declared on a defendant's motion, absent prosecutorial misconduct intended to provoke the defendant to move for a mistrial." *Poretta* v. *Commonwealth,* 409 Mass. 763, 765 (1991). *Donavan* v. *Commonwealth,* 426 Mass. 13, 14-15 (1997). The burden is on the defendant to show prosecutorial "goading." *Commonwealth* v. *Andrews,* 403 Mass. 441, 448 (1988). The question whether a prosecutor intentionally provoked the defendant into moving for a mistrial is one of fact and requires either that the judge make such a finding or that the provocation be apparent on the record. *Commonwealth* v. *Andrews, supra. Commonwealth* v. *Carver,* 33 Mass. App. Ct. 378, 388 (1992). The prosecutorial misconduct must be of a specific character — i.e., the standard "requires some form of 'overreaching,' 'harassment,' or other intentional misconduct on the part of the prosecution aimed at provoking a mistrial in order for a retrial to be barred . . . ." *Donavan* v. *Commonwealth,* 426 Mass. at 15. Unintentional prosecutorial mistakes, arising from negligence or inadvertence (as in this case), although resulting in mistrials, do not bar a second trial. *Id.* at 15-16.

The judge did not make a finding that the prosecutor intentionally provoked the defendant into moving for a mistrial. Rather, the judge's comments suggest that the prosecutor, through inexperience, negligently or inadvertently elicited an answer that resulted in a mistrial. The record also does not sup-

---

[3]The prosecutor apologized to the judge for asking the question that led to the mistrial. The judge responded, "You don't have to apologize to me. It's a lesson well learned."

port any finding of intentional provocation. As the judge observed, the Commonwealth's case against the defendant was very strong, and, further, because the prosecutor had not had any problems in presenting his case, there is nothing in the record to suggest that the prosecutor deliberately forced a new trial. Therefore, retrial was not barred.

2. *Reasonable doubt instruction.* The defendant also claims that the judge's instructions on reasonable doubt, unobjected to by trial counsel, lowered the Commonwealth's burden of proof and shifted the burden to the defendant, thus creating a substantial risk of a miscarriage of justice. Specifically, he argues that the judge altered the burden of proof by saying (1) that proof beyond a reasonable doubt does not mean "proof beyond a whimsical or fanciful doubt" and (2) that a "reasonable doubt does not mean such doubt as may exist in the mind of a man who is earnestly seeking for doubts or for an excuse to acquit a defendant; but it means such doubt as remains in the mind of a reasonable man who is earnestly seeking the truth."

"When we review a jury instruction to determine whether the charge unconstitutionally diminishes the Commonwealth's burden of proof, we consider 'whether a reasonable juror could have used the instruction incorrectly.' " *Commonwealth* v. *Anderson*, 425 Mass. 685, 688 (1997), quoting from *Commonwealth* v. *Rosa*, 422 Mass. 18, 27 (1996). In making that determination, we review the instructions to the jury as a whole. *Commonwealth* v. *Watkins*, 425 Mass. 830, 837 (1997). Viewed in their entirety, the instructions in the present matter fully and properly conveyed the appropriate burden of proof. The judge gave a charge almost verbatim to other charges that have consistently passed constitutional inspection. *Commonwealth* v. *Gagliardi*, 418 Mass. 562, 568-569 n.3 (1994), cert. denied, 513 U.S. 1091 (1995). Viewed as a whole, the instructions on reasonable doubt and the Commonwealth's burden of proof adequately conveyed the measure of certainty required to find the defendant guilty.

3. *Claim of duplicative conviction.* The defendant asserts that his conviction of kidnapping must be vacated because it is duplicative of his convictions of armed robbery and home invasion and did not constitute a separate crime.[4]

A defendant may be properly prosecuted and punished for

---

[4]In his brief, the defendant labels the issue as the trial judge's erroneous denial of the defendant's motion for a required finding of not guilty on the

crimes arising out of a single course of conduct provided that each crime requires proof of an element that the others do not. *Morey* v. *Commonwealth*, 108 Mass. 433, 434 (1871). The crime of kidnapping requires proof that the defendant "forcibly or secretly confine[d] or imprison[ed] another person . . . against his will . . . ." G. L. c. 265, § 26, as appearing in St. 1971, c. 900. Neither robbery nor home invasion requires this element, and the defendant concedes that the crime of kidnapping requires proof of facts not necessary for the other two offenses.

The defendant argues, however, that punishment is precluded because the kidnapping charge is so closely related to the armed robbery and home invasion offenses.

Here, while holding a knife, the defendant burst into the victim's room and forced him face down onto his bed. Then, using the victim's bedsheets, the defendant tied the victim's hands and feet and bound his eyes and mouth. The defendant threw a blanket over the victim's head and searched through his room for money and valuables. The evidence concerning confinement of the victim is thus sufficient to support the conviction of kidnapping, separate and apart from the acts supporting the home invasion and armed robbery offenses. See *Commonwealth* v. *Rivera*, 397 Mass. 244, 253-254 (1986) (court "unwilling to adopt a rule that requires the treatment of confinement or asportation used as a means to facilitate the commission of [robbery] as merged in the substantive crime"). Compare *Commonwealth* v. *Kickery*, 31 Mass. App. Ct. 720, 723-724 (1991), in which confinement while a rape was in progress was integral to the crime and, hence, there was no kidnapping at that point.

*Judgments affirmed.*

---

kidnapping charge. The body of his argument on that issue only addresses the merits of the alleged duplicative kidnapping conviction. On the record before us, the judge properly denied the defendant's motion.