**ASWAD PICKERING, Appellant/Defendant**

**v.**

**PEOPLE OF THE VIRGIN ISLANDS, Appellee/Plaintiff**

S. Ct. Criminal No. 2015-0017

Supreme Court of the Virgin Islands

February 25, 2016

ADAM K. GUSMAN, ESQ., Westborough, MA, *Attorney for Appellant.*

SAMUEL A. WALKER, ESQ., Deputy Solicitor General, St. Croix, USVI; KIMBERLY L. SALISBURY, ESQ., Assistant Attorney General, St. Thomas, USVI, *Attorneys for Appellee.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice.*

## OPINION OF THE COURT

(February 25, 2016)

HODGE, *Chief Justice.* Appellant Aswad Pickering commenced this appeal from the Superior Court's February 10, 2015 order, which denied his motion to dismiss two counts of a felony information pending against him under the Double Jeopardy Clause of the Fifth Amendment of the United States Constitution. Because Pickering has now abandoned his request to have these charges dismissed, and he will face re-trial

357

regardless of the outcome of this appeal, we dismiss his appeal for lack of jurisdiction.

## I. BACKGROUND

The People of the Virgin Islands originally charged Pickering with one count of third-degree assault in violation of title 14, section 297(2) of the Virgin Islands Code; one count of unlawfully discharging a firearm in violation of title 23, section 479(a)(2); three counts of unauthorized use of a firearm in violation of title 14, section 2253(a); and one count of first-degree reckless endangerment in violation of title 14, section 625(a). These charges all stemmed from an incident that occurred on July 19, 2011, in Cruz Bay, St. John, where Pickering and Arthur Hercules both discharged firearms at each other.

At trial, conflicting evidence was presented on the question of whether Pickering or Hercules fired a weapon first, and which man acted in self-defense. Hercules testified that he and Pickering grew up together and were once on good terms, but through time, their relationship turned sour. (J.A. 47.) He further claimed that, in the months preceding the July 19, 2011 incident, he and Pickering had multiple encounters, at least two of which required him to file a police report with the Virgin Islands Police Department. (J.A. 50, 58.) He explained that on July 19, 2011, he next saw Pickering "riding down the road shooting" in his direction, and he began to run. (J.A. 61.) At the time, Hercules was also carrying an firearm that he fired in claimed retaliation to Pickering's attack. (J.A. 63, 66.) After fleeing the scene, Hercules returned to his home in Coral Bay, St. John, where he proceeded to cut the weapon he used into three pieces, and disposed of it in a garbage can. (J.A. 77.) Later that same day, after discarding the weapon, Hercules made a statement to the police wherein he failed to mention that he had also fired a firearm because he was "nervous." (J.A. 66.) He was subsequently arrested, charged, and entered a plea agreement with the People in which he agreed to plead guilty to reckless endangerment in exchange for testifying against Pickering. (J.A. 67.)

Next, the People called Neville Samuel, Jr. — Hercules's cousin — as a witness. (J.A. 122-23.) Samuel corroborated Hercules's testimony and explained that he was in his car in the immediate area at the time of the shooting. He claimed to have seen the weapon in Pickering's hand and that Pickering also fired a shot at his vehicle. (J.A. 129, 132.) Two

additional witnesses for the People who were in the area of the shooting were unable to definitively identify Pickering as a shooter, but testified that a person matching Pickering's description fired a weapon at the same location; neither was able to determine if the described man fired first. (J.A. 176-77, 187-89, 193.) Lastly, the People presented an expert who testified that shell casings from two firearms were recovered from the scene of the crime. (J.A. 370-71.) Multiple shell casings were tested and found to be consistent with the firearm recovered from Pickering on the evening of the incident, although testimony established that several casings "couldn't be identified or excluded as being fired in the same gun . . . . But if the gun was not altered and they were fired at or about the same time, there had to be two guns that were fired." (J.A. 371.) It was impossible for Pickering's weapon to have been altered in the short period surrounding the shooting. (*Id.*) Thus, the expert concluded that there was an additional unrecovered firearm used at the shooting scene. (*Id.*)

Testifying on his own behalf, Pickering countered not by denying his involvement; instead, he contended that he shot the firearm in self-defense. He told the jury that on July 19, 2011, after doing his laundry at a laundromat in Cruz Bay, he was traveling in his car when traffic came to a sudden stop. (J.A. 232.) He explained that when he looked to the side to determine what was happening, Hercules got out of his nearby car, ran towards him, and began to fire gunshots in his direction. He further stated that one projectile was fired through his windshield, narrowly missing his face and causing glass to enter his eye, and another shot traveled through the front of his car near the grill. (J.A. 232-34, 236-38, 248.) He then jumped out of his vehicle to "duck for cover" to the side of his car; by this time, Hercules had intermittently stopped shooting. (J.A. 239.) That, Pickering claimed, was when "[he] saw a gun right behind of his driver's side wheel" on the ground. (J.A. 240.) Pickering stated his belief that Hercules must have dropped the gun after Hercules fired through his windshield, then kicked it under his car while he was still in a running motion, and the gun came to rest behind the driver's side wheel. (J.A. 241.) He asserted that it was at this moment when he picked up the firearm.

Pickering stated that he then "heard like a shot coming from like the backside of [his] car. So [he ran] more to the front. When I [ran] to the front I saw Hercules . . . running back down in this direction pulling a next gun." (J.A. 242.) At this point Pickering stated that he began to fire two

rounds, claiming to have just "wanted to run him off." (J.A. 242-244.) Hercules allegedly continued to fire rounds in Pickering's direction as he ran away; eventually, Pickering got back to his car and Hercules was out of sight. (J.A. 244-46.) Pickering claimed, however, that as he attempted to drive away, Samuel's car was directly behind his car and that he believed that he was being ambushed by the two men; as a result, he began to open fire on Samuel. (J.A. 245-247.) Samuel escaped, and Pickering proceeded to drive to his home. (J.A. 248.) Photographs taken were admitted into evidence, depicting a bag of laundry in Pickering's back seat, and bullet holes in his vehicle.

Ultimately, the jury acquitted Pickering of both third-degree assault and unlawful discharge of a firearm, but failed to reach a unanimous verdict on the unauthorized use of a firearm counts, and reckless endangerment. The Superior Court declared a mistrial on the undecided charges, and on August 16, 2013, Pickering filed a motion to dismiss the unauthorized use of a firearm counts based on the jury's acquittal on the third-degree assault and unlawful discharge of a firearm counts. According to Pickering, the jury's acquittal on those two counts precluded the People from re-trying him on the unauthorized use of a firearm counts due to "the issue-preclusion component of the Double Jeopardy Clause of the Fifth Amendment." (J.A. 9.)

In a February 10, 2015 order, the Superior Court dismissed one of the unauthorized possession counts on grounds unrelated to the issue presented on appeal, but denied Pickering's motion on other grounds. Relying on our decision in *Ambrose v. People*, 56 V.I. 99, 105 (V.I. 2012), the Superior Court determined that the only elements of the crime of unauthorized possession of a firearm under section 2253(a) are possession of a firearm without legal authorization to do so, and that Pickering's acquittal on the third-degree assault and unlawful discharge counts would — at best — only affect the sentence that could be imposed in the event he were convicted of unauthorized possession at his retrial.

Pickering timely filed his notice of appeal on February 13, 2015, *see* V.I.S.Ct.R. 5(b)(1), and filed his appellate brief with this Court on August 18, 2015. In his brief, Pickering invoked the United States Supreme Court's holding in *Abney v. United States*, 431 U.S. 651, 97 S. Ct. 2034, 52 L. Ed. 2d 651 (1977), as the jurisdictional basis for his interlocutory appeal, contending that "a trial court's order denying a defendant's pretrial motion to dismiss an information . . . on double jeopardy grounds

is immediately appealable." (Appellant's Br. 1.) Pickering further argued that "the trial court's decision should be reversed, and [the unauthorized possession counts] dismissed to avoid placing [him] in double jeopardy in violation of his constitutional rights to due process," and that "[i]n the alternative, the matter should be remanded to the trial court with instructions that [Pickering] is ineligible as a matter of law for the enhanced penalty otherwise associated with use of a firearm in a crime of violence." (Appellant's Br. 12.) In its brief, the People — like the Superior Court — relied on our *Ambrose* decision to support its claim that use of a firearm during a crime of violence is not an element of the offense of unauthorized possession of a firearm, but only serves as a potential factor cognizable in enhancing the sentence.

This Court heard oral argument on December 8, 2015.[1] There, Pickering, through his counsel, abandoned his claim that the unauthorized possession of a firearm charges should be dismissed, and conceded that Pickering could be re-tried for those offenses:

> THE CHIEF JUSTICE: Is self-defense a defense to possession of a firearm?
>
> ATTORNEY GUSMAN: Simple possession of a firearm we do not believe has been foreclosed in this case and that is one of the counts that, on remand — this case will be remanded either way, Your Honor, no matter what this Court decides, and we have not objected to the retrial of simple possession . . . .

Similarly, when questioned about whether the People could re-try Pickering on the reckless endangerment charge, Pickering conceded that he could be re-tried on that count as well:

> ATTORNEY GUSMAN: As an officer of the Court, I must clear up one thing, the reason — our appeal has been carefully crafted . . . . We are not asking you to preclude the reckless endangerment retrial. . . . There will be a retrial of this matter, Your Honors. . . .

Rather, Pickering limited his argument solely to contending that the Superior Court cannot impose the crime-of-violence sentence enhancement fac-

---

[1] The full video and audio of the oral argument in this case may be accessed at this Court's website at http://visupremecourt.org/Media_Services/Video_Archive/videodisplay.asp?Video ID=186.

tor in the event he is ultimately convicted of unauthorized possession at his retrial.

## II. JURISDICTION

■ ■ With limited exceptions, this Court may only exercise jurisdiction over appeals arising from final judgments of the Superior Court. 4 V.I.C. § 32(a). We have, however, recognized that "the United States Supreme Court has held that 'pretrial orders rejecting claims of former jeopardy . . . constitute "final decisions" ' which qualify for an immediate appeal under the collateral order doctrine." *Najawicz v. People*, 58 V.I. 315, 323 (V.I. 2013) (quoting *Abney*, 431 U.S. at 662). The United States Supreme Court, although recognizing that piecemeal appeals in criminal cases are highly disfavored, nevertheless held that an immediate appeal is constitutionally required because

> the Double Jeopardy Clause protects an individual against more than being subjected to double punishments. It is a guarantee against being twice put to *trial* for the same offense.
>
> . . . .
>
> Because of this focus on the "risk" of conviction, the guarantee against double jeopardy assures an individual that, among other things, he will not be forced, with certain exceptions, to endure the personal strain, public embarrassment, and expense of a criminal trial more than once for the same offense.
>
> . . . .
>
> Obviously, these aspects of the guarantee's protections would be lost if the accused were forced to "run the gauntlet" a second time before an appeal could be taken; even if the accused is acquitted, or, if convicted, has his conviction ultimately reversed on double jeopardy grounds, he has still been forced to endure a trial that the Double Jeopardy Clause was designed to prohibit. Consequently, if a criminal defendant is to avoid *exposure* to double jeopardy and thereby enjoy the full protection of the Clause, his double jeopardy challenge to the indictment must be reviewable before that subsequent exposure occurs.

*Abney*, 431 U.S. at 660-62 (emphases in original).

The Superior Court denied Pickering's motion to dismiss the remaining two counts of the information charging unauthorized possession of a

362

firearm because — relying on this Court's precedents — it determined that Pickering's acquittals on the third-degree assault and unlawful discharge counts were completely unrelated to any of the elements of an unauthorized possession charge, and could only potentially affect imposition of the sentencing enhancement in the event he were ultimately convicted on retrial. In his appellate brief, Pickering disagreed with the Superior Court's analysis, and requested that we reverse and dismiss the two remaining unauthorized possession counts.

 Had Pickering maintained this position, this Court would at least arguably possess jurisdiction over this appeal under the rules announced in *Abney* and *Najawicz*.[2] However, as set forth above, at oral argument Pickering — through his counsel — expressly and unambiguously stated that he does not object to a retrial on either the unauthorized possession of a firearm or reckless endangerment charges. Instead, Pickering's counsel stated at oral argument that he was only arguing that Pickering's acquittal for third-degree assault precludes the jury in his second trial from finding that he committed unauthorized possession during the commission of a crime of violence. But because "the additional requirement that the defendant possessed the firearm 'during the commission . . . of a crime of violence' [is] merely enhancing the penalty for the [underlying] offense" of unauthorized possession, *Ambrose*, 56 V.I. at 105, Pickering will face retrial for the underlying offense of unauthorized possession regardless of the outcome of this appeal. Every appellate court to consider the question has held that an immediate appeal of an order denying a motion to dismiss on double jeopardy grounds is not authorized when, regardless of the outcome of the appeal, the defendant

---

[2] We note that this case differs from *Abney* and *Najawicz* in that, even in his appellate brief, Pickering only requested dismissal of the two unauthorized possession charges, but did not ask that this Court order dismissal of the reckless endangerment charge, whereas the defendants in *Abney* and *Najawicz* sought dismissal of all of the charges that had been brought against them. Significantly, with the exception of the United States Court of Appeals for the District of Columbia Circuit, "no appellate court appears to have ruled directly on the question of whether *Abney* extends to an appeal from the denial of a motion to dismiss a single count of a multi-count indictment." *United States v. Ginyard*, 511 F.3d 203, 208, 379 U.S. App. D.C. 174 (D.C. Cir. 2008). Because we conclude that Pickering has waived his claim that the People cannot re-try him on the two remaining unauthorized possession counts, we need not determine whether the rule announced in *Najawicz* and *Abney* would have authorized Pickering to appeal from the Superior Court's refusal to dismiss the unauthorized possession counts notwithstanding his failure to object to re-trial on the reckless endangerment charge.

will need to face a retrial for the underlying offense. *See, e.g., United States v. Wright*, 776 F.3d 134, 144 (3d Cir. 2015) ("[A]lthough the collateral-estoppel rights at issue are founded in the Double Jeopardy Clause, Appellants do not 'contest[t] the very authority of the Government to hale [them] into court to face trial on the charge[s] against [them].' Instead, they concede that they face retrial on all counts of conviction regardless of our ruling . . . . Accordingly, we will dismiss the portion of this appeal pertaining to the District Court's application of the collateral-estoppel doctrine." (quoting *Abney*, 431 U.S. at 659)); *United States v. Witten*, 965 F.2d 774, 776 (9th Cir. 1992) (*"Abney* does not provide a basis for finding jurisdiction here. . . . Even if the alleged predicate act were dismissed, the appellants would still face trial for conspiracy to violate RICO."); *United States v. Marino*, 200 F.3d 6, 11 (1st Cir. 1999) (declining jurisdiction under *Abney* when even a ruling in the defendant's favor "would not necessitate a dismissal" of the underlying charge); *United States v. Tom*, 787 F.2d 65, 68 (2d Cir. 1986) ("Appellants apparently believe that an interlocutory appeal may be taken from a pretrial ruling in a criminal case that denies any relief sought on the basis of the Double Jeopardy Clause. We disagree. [A defendant] is not entitled to an interlocutory appeal to avoid whatever slight increment of strain, embarrassment, or expense might arise from having to defend against allegations made or evidence presented in connection with a court on which trial will in any event occur."); *United States v. Gulledge*, 739 F.2d 582, 586 (11th Cir. 1984) ("Unlike the defendant in *Abney*, Gulledge will undergo a second trial regardless of our ruling . . . . Consequently, full protection of his fifth amendment right does not depend on appellate review at this time."); *United States v. Head*, 697 F.2d 1200, 1205 (4th Cir. 1982) (holding no jurisdiction under *Abney* when appeal, even if successful, "could only lessen and not wholly remove the possibility of conviction [upon] being again tried").

██ ██ Significantly, in this case, Pickering did not simply forfeit any claim that the unauthorized possession and reckless endangerment charges should be dismissed, but actively waived them. Forfeiture is distinct from waiver because "[w]hen a legal rule has been waived, an appeal based upon the nonadherence to that legal principle is precluded," but "[i]f, however, the correct application of the rule merely was 'forfeited,' then an appellate court may nevertheless review for plain error." *Murrell v. People*, 54 V.I. 338, 361 (V.I. 2010) (quoting *Gov't of*

*the V.I. v. Rosa*, 399 F.3d 283, 290 (3d Cir. 2005)). To determine whether a claim has been forfeited or waived, this Court primarily looks to whether the party "was aware of the relinquished or abandoned right." *Id.* at 362 (quoting *Rosa*, 399 F.3d at 291). Thus, simply failing to object or raise an issue will typically result in a forfeiture that may be reviewed by this Court for plain error, even *sua sponte*, whereas an active inducement, acquiescence, or other affirmative act demonstrates an intentional waiver of an issue or right that this Court will not notice even under plain-error review. *Williams v. People*, 59 V.I. 1024, 1033 (V.I. 2013). And while, in this case, it was Pickering's counsel — rather than Pickering himself — who affirmatively stated at oral argument that he does not object to a retrial on unauthorized possession or reckless endangerment, defense counsel is authorized to waive a double jeopardy claim on behalf of the defendant on appeal unless doing so would rise to the level of ineffective assistance of counsel. *See, e.g., Jones v. Barnes*, 463 U.S. 745, 751, 103 S. Ct. 3308, 77 L. Ed. 2d 987 (1983) (holding that the decision of what issues to brief on appeal belongs solely to the attorney, and not the criminal defendant); *United States v. Bobo*, 586 F.2d 355, 364 n.6 (5th Cir. 1978) (holding that a defendant and his attorney are "a single entity" with respect to double jeopardy waiver); *Nero v. District of Columbia*, 936 A.2d 310, 316 (D.C. 2007) ("By moving for a mistrial, trial counsel effectively waived [the defendant]'s claims of double jeopardy. . . ."); *People v. Lopez*, No. E033025, 2004 Cal. App. Unpub. LEXIS 9473 (Cal. Ct. App. Oct. 19, 2004) (unpublished) ("[T]rial counsel may waive an accused's double jeopardy rights as a matter of trial tactics.") (citing *People v. Brandon*, 40 Cal. App. 4th 1172, 47 Cal. Rptr. 2d 383, 385 (1995)); *Poretta v. Commonwealth*, 409 Mass. 763, 569 N.E.2d 794, 796 (1991) ("[T]here can be no doubt that the Federal Constitution does not condition the permissibility of retrial on the defendant's personal, explicit assent to a mistrial motion brought by his attorney."); *People v. Ferguson*, 67 N.Y.2d 383, 494 N.E.2d 77, 80-82, 502 N.Y.S.2d 972 (1986) (holding that defense counsel validly waived a double jeopardy claim by assenting to a mistrial when defendant was not consulted or present); *State v. Fitzpatrick*, 676 S.W.2d 831, 836 (Mo. 1984) (counsel has "responsibility for representing a defendant, including the making of numerous decisions through the proceedings" which are binding "[i]n the absence of . . . evidence of personal disagreement between defendant and his attorney" at the time, or "apparent protest" by the client). Consequently, we dismiss this appeal for lack of jurisdiction.

## III. CONCLUSION

Although Pickering maintained at trial and in his appellate brief that the two remaining charges of unauthorized possession of a firearm must be dismissed due to his acquittal on the third-degree assault and unlawful discharge charges, he expressly conceded at oral argument that he may be retried on all remaining charges, and limited his argument solely to challenging the potential imposition of a sentence enhancer if he is ultimately convicted at retrial. Since Pickering's waiver prevents this Court from granting him any relief that would prevent a retrial, an immediate appeal is not necessary to safeguard any of the rights conferred by the Double Jeopardy Clause. Accordingly, we dismiss this appeal for lack of appellate jurisdiction.