**United States Court of Appeals**
FOR THE EIGHTH CIRCUIT

_____

No. 97-1237
_____

United States of America,   *
                             *
     Plaintiff - Appellee,   *
                             *   Appeal from the United States
     v.                      *   District Court for the District
                             *   of Minnesota
Michael Dean Melius,         *
                             *
     Defendant - Appellant.  *

_____

Submitted: June 10, 1997

Filed: September 9, 1997
_____

Before LOKEN and ROSS, Circuit Judges, and FENNER,[1] District        Judge.
_____

FENNER, District Judge.

After the declaration of a mistrial without his consent, Michael Dean Melius ("Melius") filed a motion to dismiss the indictment against him on double jeopardy grounds.  Melius now appeals the order of the district court[2] which denied his motion to dismiss.  Because we hold that the district court exercised sound

_____

[1]The Honorable Gary A. Fenner, United States District Judge for the Western District of Missouri, sitting by designation.

[2] The Honorable James M. Rosenbaum, United States District Judge for District of Minnesota, Fifth Division.

discretion in determining that the mistrial was based upon "manifest necessity," we affirm the district court's order.

## I.

On November 13 and 14, 1996, Melius was tried in Duluth, Minnesota, on a two-count superseding indictment charging him with possession with intent to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), relating to events on March 21, 1996 and May 22, 1996. Late in the day on Thursday, November 14, 1996, the case was submitted to the jury. At that time Judge Rosenbaum, who had conducted the trial, left Duluth for Minneapolis, Minnesota. Arrangements were made for the verdict to be handled by the Honorable Gerald W. Heaney.

On the morning of Friday, November 15, 1996, it came to the court's attention that a woman had contacted a group of jurors the previous evening in an attempt to discuss the trial with them. Deliberations were suspended and Judge Rosenbaum held a hearing on Monday, November 18, 1996. Upon questioning the entire jury, jurors Napper, Melde, and Hermanson indicated that they were parties to the extraneous conversation. The three contacted jurors and a fourth juror, foreperson Miller, were each examined individually about the incident in chambers.

Each of the contacted jurors testified that after they had been excused from deliberations for the day on November 14, 1996, they went to a bar in the Radisson Hotel. The jurors first hesitated in entering the bar because they recognized a group of people there as being present in the courtroom during the trial. Ultimately, the jurors entered but decided to sit at the bar's far end away from the group which they recognized. Shortly thereafter a woman from the group approached the three jurors and asked them if the jury had reached a verdict, to which one of the jurors

2

responded that they had not.  The woman then asked the three whether they wanted to know why she had not testified during the trial.  One of the jurors told the woman that they could not discuss the matter with her and the contact ended.  The woman and her group then left the bar.  While the jurors recognized the woman as being present during the trial, they were not sure who she was or why she had been present in the courtroom.  Foreperson Miller then joined the other three jurors at the bar and was told about the contact with the woman.  After discussing the matter, the jurors decided that they would have to report the incident to the judge.

According to the interrogated jurors, the other eight jurors were aware that a note had been written to the court and that several jurors had been approached the night before although it is unclear from the record how the other jurors acquired this information.  After the voir dire, the district court noted that all of the jurors "were aware that a note was sent by someone other than the foreperson, and at least in outline must know the nature of the communication."  The four jurors who were questioned individually all stated that their deliberations would not be affected by the incident and that each believed he or she could be impartial.

After questioning the four jurors, the district court asked counsel for their positions on whether a mistrial was necessary.  Defense counsel stated that he did not think that there were grounds for a mistrial and that it was his position that the jury should continue with their deliberations.  The government expressed concern that the woman's comments bolstered the position of the defense as set forth in its closing argument, stating

> I'm . . . concerned in light of the allegations made during
> closing argument, to the effect that government witnesses had
> lied or had forgotten things or were hiding

3

> evidence, and allegations that were made against the prosecutor
> in this case to that effect, that the mere fact that a witness
> walks up or an individual walks up to a group of jurors to
> explain why she didn't testify tends to throw the jurors into
> a state of confusion, at a minimum, regarding how to assess the
> viability of the defense position in this case. And therefore
> I am concerned, as I indicated on Friday, not only with the
> fact of the cont[act], but with the mere few words that were
> spoken, but because I think they go to the heart of the defense
> in this case.

The government also stated that it was unsure how a jury would react to the extraneous information, whether there would be a knee-jerk reaction to accept the proposition of the defense set forth in its closing argument or whether the reaction would be to reject the defense's theory. Regardless, the government contended that the prospect of a tainted juror was "highly probable." Following these statements by the parties, the court asked counsel if anything further should be said to the jury. At the time that the court made the inquiry, neither party had moved for a mistrial. Defense counsel responded to the inquiry by stating that it did not believe that any further statements were necessary. The government took no position.

After a short recess the district court announced that it was ordering a mistrial on the basis that the woman's contact with the three jurors, together with the interruption of deliberations and questioning of jurors by the court, tainted the jury. The district court also made a finding that there was "manifest necessity" to declare the mistrial.

> In my view the interests of justice were clear. It is
> impossible for me to imagine that there could not have been
> some question raised as to whether or not the comings and
> goings of jurors, the fact that what could have been perceived
> as some kind of a rump group wrote a note or felt compelled to
> write a note, to be interviewed by the Court, the fact that the
> Court obviously interrupted their deliberations. Under those

4

circumstances, it is impossible for me to believe that the defendant might not one day have been of a mind that maybe something happened with the jury in a fashion which would have made it difficult for him to be confident in the jury's verdict, and the Court would have to be questionable, or it would have to question the jury's verdict. Under those circumstances there was a manifest necessity.

Subsequently, a date for the second trial was scheduled. Melius then moved to dismiss the indictment against him on double jeopardy grounds. The government's response included the affidavit of assistant United States attorney, Mark D. Larsen, which discussed information which the Federal Bureau of Investigation acquired in connection with a jury tampering investigation which commenced after the mistrial was declared. The affidavit focused on Nicole Wasson, the girlfriend of Melius who contacted the three jurors. The implication of the affidavit and the allegations which the government makes in its brief relating to the investigation, suggest that Nicole Wasson's meeting with the three jurors was not a chance happening but occurred as a result of a planned effort to influence the jury. Although the affidavit states nothing about any complicity on the part of Melius to tamper with the jury, the government's brief states "there still remains a 'distinct possibility' that the defendant engaged in misconduct to avoid a guilty verdict."

On December 27, 1996, the district court heard argument on the motion to dismiss, during which the defense unsuccessfully attempted to strike the prosecutor's declaration. The district court acknowledged that the material was not taken into consideration by the court in declaring the mistrial, but permitted its addition "for the purposes of fleshing out the record." At the end of the hearing the district court took the matter under advisement. On January 13, 1997, the district court summarily denied Melius' motion to dismiss.

The Fifth Amendment provides that "[n]o person shall . . . be subject for the same offence to be twice put in jeopardy of life or limb." U.S. CONST. amend. V. The protection afforded by the Fifth Amendment against being subject to double jeopardy is a "valued right," *Washington v. Arizona*, 434 U.S. 497, 503 (1978), which is "'fundamental to the American scheme of justice.'" *Benton v. Maryland*, 395 U.S. 784, 795 (1969)(*quoting Duncan v. Louisiana*, 391 U.S. 145, 149 (1968). Constitutional protection is afforded against double jeopardy to prevent the State, with all its resources and power from making repeated attempts to convict an individual for an alleged offense, "thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty." *Green v. United States*, 355 U.S. 184, 187–88 (1957); *see also Washington*, 434 U.S. at 503-05.

The Fifth Amendment's protection against double jeopardy attaches when the jury is empaneled and sworn, *Crist v. Bretz*, 437 U.S. 28, 35 (1978), however, unlike the case where the trial has ended in acquittal, retrial is not always barred by the Fifth Amendment when the trial has terminated without a verdict. *Washington*, 434 U.S. at 505. If the rule was otherwise, it "would create an insuperable obstacle to the administration of justice in many cases in which there is no semblance of the type of oppressive practices at which the double-jeopardy prohibition is aimed." *Wade v. Hunter*, 336 U.S. 684, 688-89 (1949). Consequently, a defendant's valued right not to be subject to double jeopardy "'must in some instances be subordinated to the public's interest in fair trials designed to end in just judgments.'" *United States v. Jorn*, 400 U.S. 470, 480 (1971)(*quoting Wade*, 336 U.S. at 689).

Although the Supreme Court has refused to establish specific guidelines for weighing these competing interests, retrial has long been permitted where "taking all the circumstances into consideration, there is a manifest necessity for the act [of mistrial]."[3] *United States v. Perez*, 22 U.S.(9 Wheat.) 579, 580 (1824).

The United States Supreme Court has recognized that there are varying degrees of necessity and a "high degree" of necessity must exist before a mistrial is appropriate. *Washington*, 434 U.S. at 506. However, whether a high degree of necessity exists depends on the circumstances of each case. *Id*. at 508. At one end of the spectrum, strict scrutiny is appropriate when the basis for the mistrial is the unavailability of government evidence or when there has been government misconduct. *Id*. At the other extreme is the case where the jury is unable to reach a verdict, a situation in which it has long been the rule that a mistrial is appropriate. *Id*. at 509. In that situation, the trial judge has broad discretion in determining whether or not manifest necessity exists. *Id*. "Because possible juror bias falls nearer to the deadlocked jury end of the spectrum of the trial problems which may warrant a mistrial, the district court's decision to declare a mistrial on that ground is entitled to 'great deference.'" *Dixon*, 913 F.2d at 1311 (*citing Washington*, 434 U.S. at 512-14). The deference granted to a district court in determining that "manifest necessity" exists for a mistrial is justified because the trial

---

[3] We note that a trial court need not find "manifest necessity" if the defendant requests or consents to the mistrial. *See Oregon v. Kennedy*, 456 U.S. 667, 672 (1982)(recognizing that "manifest necessity" standard has no place in application of Double Jeopardy Clause where defendant has elected to terminate the proceedings against him); *see also United States v. Dixon*, 913 F.2d 1305, 1310 n.2 (8th Cir. 1990)(noting that "'manifest necessity' test does not apply when the defendant has requested or consented to a mistrial").

judge is in a much better position than is an appellate court to evaluate the significance of possible juror bias. *Washington*, 434 U.S. at 513. Consistent with this deference, we must satisfy ourselves the district court's decision that manifest necessity existed for the mistrial was an exercise of its "sound discretion." *Washington*, 434 U.S. at 514; *Dixon*, 913 F.2d at 1311.

While the trial court's decision is entitled to much deference in cases involving possible juror bias, its determination of manifest necessity is not beyond review. The trial court is obligated to use its power to order a mistrial with the "greatest caution." *Jorn*, 400 U.S. at 481. The trial judge "must always temper the decision whether or not to abort the trial by considering the importance to the defendant of being able, once and for all, to conclude his confrontation with society through the verdict of a tribunal he might believe to be favorably disposed to his fate.'" *Id.* at 486. "If the record reveals that the trial judge has failed to exercise the 'sound discretion' entrusted to him, the reason for such deference by an appellate court disappears." *Washington*, 434 U.S. at 510 n.28. Therefore, in reviewing the district court's decision, we seek assurance that "the district court, in declaring a mistrial, acted 'responsibly and deliberately, and accorded careful consideration to [the defendants'] interest in having the trial concluded in a single proceeding.'" *Dixon*, 913 F.2d at 1311 (*quoting Washington*, 434 U.S. at 516). Consultation with counsel, consideration of alternatives to mistrial, and the amount of time dedicated to the mistrial decision are indicative of whether the trial court acted responsibly and deliberately. *See Dixon*, 913 F.2d at 1311 (recognizing that "consultation with counsel and consideration of available alternatives are consistent with the exercise of sound discretion"); *see also Brady v. Samaha*, 667 F.2d 224, 229 (1st Cir.

1981)("A precipitate [sic] decision, reflected by a rapid sequence of events culminating in a declaration of a mistrial, would tend to indicate insufficient concern for the defendant's constitutional protection."). Similarly, if a trial judge acts "irrationally or irresponsibly, his action cannot be condoned." *Washington*, 434 U.S. at 514 (citations omitted).

## III.

As a preliminary matter, Melius contends that the information acquired by the government during its jury tampering investigation which was submitted to the district court in consideration of his motion to dismiss should not be considered as part of the record because it was not before the district court when it declared the mistrial and therefore could not have been a basis upon which the district court declared the mistrial. The government argues that by filing his motion to dismiss, "defendant created the possibility that new information would be made part of the record." In the case at bar the government merely speculates that Melius may have been implicated in Ms. Wasson approaching the jury. The government does not present sufficient evidence to support its argument and accordingly we do not consider that Melius was somehow involved in Ms. Wasson's actions.

Our review of the record in this case reveals that the district court exercised sound discretion in determining that manifest necessity existed for the mistrial. Based upon the record we cannot conclude that the district court acted precipitately or hastily in declaring the mistrial. On the contrary, the district court founded its ruling upon a careful examination of four jurors, an opportunity for the parties to be heard, and careful consideration of the issue before the court. The record amply demonstrates that the district judge exercised his discretion only after informing himself of the relevant factors and taking adequate

time to reach his decision that the mistrial was based upon manifest necessity.

At the heart of the district court's decision was the concern that any verdict which the jury might have reached would have been tainted by the contact in the bar and the circumstances surrounding the interruption in the jury's deliberations.[4] We remind ourselves that the extent of possible juror bias is difficult to measure, and therefore, the district court's "evaluation of the likelihood that the impartiality of one or more jurors may have been affected" is entitled to "the highest degree of respect." *Washington*, 434 U.S. at 511.

> [The trial judge] has seen and heard the jurors during their voir dire examination. He is the judge most familiar with the evidence and the background of the case on trial. He has listened to the tone of the argument as it was delivered and has observed the apparent reaction of the jurors. In short, he is far more "conversant with the factors relevant to the determination" than any reviewing court can possibly be.

*Id*. at 514 (*citing Wade*, 336 U.S. at 687). We also note that it is well established that "[t]he exposure of the jury to improper communications or extrinsic material evidence creates a presumption of prejudice, and therefore a presumption of an infringement of the

---

[4] Melius urges us to take a piecemeal approach to reviewing the district court's decision. His brief dissects the record, arguing that the district court's consideration of certain factors and failure to consider others when making its determination were each an abuse of discretion. This approach is contrary to settled law on the subject. We will not review the record in isolated and unrelated component parts. Our review of the district court's decision that there was manifest necessity for the mistrial is made "taking all the circumstances into consideration." *United States v. Givens*, 88 F.3d 608, 612 (8th Cir. 1996)(citing *United States v. Perez*, 22 U.S.(9 Wheat.) at 580); *see also Washington*, 434 U.S. at 517 (recognizing that a trial court is not required to make findings supporting its declaration that manifest necessity exists and therefore review is to be made based upon the entire record).

defendant's Sixth Amendment right to trial by an impartial jury." *United States v. Rowley*, 975 F.2d 1357, 1363 (8th Cir. 1992)(*citing Remmer v. United States*, 347 U.S. 227, 229 (1954), and *Osborne v. United States*, 351 F.2d 111, 117 (8th Cir. 1965)). Here, after hearing the defense's closing argument which in effect accused the government of misleading the jury, three of the jurors directly received extrinsic information that a witness was available to them, but that they had not been allowed to hear her testimony, and a fourth juror learned of the information shortly thereafter. The four members of the jury had access to the information from Thursday evening, November 14, 1996, to the following Monday, when the district court conducted its voir dire. Additionally, the contact of the jurors was the subject of a note, which the other jurors knew about, and the extraneous information entered the deliberative process very shortly after the jury had received the case for a verdict. Under these circumstances, it would not be unlikely for a juror to question whether the government had hidden evidence from them, or whether the defense was improperly attempting to influence their verdict. In light of the defense's closing argument, the district court exercised sound discretion in finding that the jury was tainted.

**IV**.

We conclude that the district court exercised sound discretion in determining that the mistrial was based upon "manifest necessity," and hold that the Double Jeopardy Clause of the Fifth Amendment does not bar a retrial in this case. Accordingly, the order of the district court denying Melius' motion to dismiss the indictment against him is affirmed.

11

A true copy.

Attest:

        CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.