**PETER R. NAJAWICZ, Appellant/Defendant**
**v.**
**PEOPLE OF THE VIRGIN ISLANDS, Appellee/Plaintiff**

S. Ct. Crim. No. 2012-0109
Supreme Court of the Virgin Islands
March 15, 2013

316

318

ROBERT L. KING, ESQ., Law Offices of Robert L. King, Esq., St. Thomas, USVI, *Attorney for Appellant*.

KIMBERLY L. SALISBURY, ESQ., Assistant Attorney General, St. Thomas, USVI, *Attorney for Appellee*.

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice*.

## OPINION OF THE COURT

(March 15, 2013)

HODGE, *Chief Justice*. Appellant Peter R. Najawicz appeals from the Superior Court's September 7, 2012 Opinion, which denied his motion to dismiss the information on grounds that continued prosecution would violate the Double Jeopardy Clause of the Fifth Amendment of the United States Constitution. Because the Superior Court did not abuse its discretion when it declared a mistrial, we affirm.

## I. STATEMENT OF RELEVANT FACTS AND PROCEDURAL POSTURE

On October 7, 2008, the People of the Virgin Islands charged Najawicz and two other individuals, Rodney E. Miller, Sr., and Amos W. Carty, Jr.,

with numerous violations of Virgin Islands criminal statutes.[1] The trial of all three defendants began on May 13, 2011, and the jury began its deliberations on Friday, June 17. (J.A. 51.) The jury deliberated until 5:00 PM that day and resumed deliberations on Monday, June 20. (J.A. 52.) At approximately 7:00 PM on Wednesday, June 22, the Superior Court judge, prior to excusing the jurors for that day, told them he "ha[s] travel plans for a long weekend" in which he would "be out of the territory Monday and Tuesday of next week," but advised that alternate arrangements would be made in the event their deliberations extended beyond his departure date. (J.A. 56-57.)

On Thursday, June 23, the jury advised the judge that it had arrived at a verdict, completed verdict forms, and submitted them to the judge for examination before the verdict's presentment. However, the verdict forms were incomplete and "indicated who voted which way with regard to each charge, none of which [we]re unanimous." (J.A. 60-61.) That evening, the judge held a conference with counsel for the People and the three defendants, where he informed them of the jury's incomplete submission, and proposed "to send them home this evening, bring them back tomorrow morning and give them additional instructions and let them continue to deliberate" with "a new set of jury forms." (J.A. 61.) At this point, counsel for Carty orally moved for a mistrial, which counsels for Miller and Najawicz orally joined. (J.A. 61.) The judge, however, responded by stating that all the attorneys should meet with him the next day at 8:30 AM to review the proposed instructions before he would read them to the jury at 9:00 AM. (J.A. 61-62.) At this point, Carty's counsel requested that the judge instruct the jury that its verdict must be unanimous, and the judge stated that he would "submit a proposed charge in the order of an *Allen* Charge."[2] (J.A. 62.) The judge then summoned the jurors, informed them that they had not presented a verdict, and directed them to return the next morning. (J.A. 62.)

On the morning of Friday, June 24, the judge met with the attorneys outside the presence of the jury. Immediately, Najawicz's counsel objected to any further instructions on the grounds that the jury "is

[1] For a summary of some of the charges against the defendants, *see In re Najawicz*, 52 V.I. 311, 323 (V.I. 2009).

[2] *See Allen v. United States*, 164 U.S. 492, 17 S. Ct. 154, 41 L. Ed. 528 (1896) (approving set of instructions given to deadlocked juries).

confused by the number and the sheer amount of charges that were made in this case," and argued that additional instruction "would constitute reversible error." (J.A. 66-67.) Shortly thereafter, counsel for Carty renewed his request for a mistrial, and also moved for permission to view the actual verdict forms and for the judge to revise some of the language in his proposed instruction. (J.A. 67.) However, counsel for Najawicz responded by stating that he did not join in the motion for a mistrial. (J.A. 69.) After the judge denied Carty's motion to view the verdict forms, Najawicz's counsel stated that he believed "that the jury has spoken inartfully" and that the jury really intended to convey to the judge "that [it has] deliberated over a number of days and in deliberating over these days . . . has said inartfully it is hopelessly deadlocked." (J.A. 71.) The judge responded by stating that he would not interpret the note he had received indicating that the jury had reached a decision in such a way, and would "give them an opportunity to clarify that decision by further instructing them that they have to deliberate to either return a verdict or advise the Court that they cannot do so." (J.A. 71-72.) The judge then agreed to include most of the suggested additions to the instruction proposed by Carty (J.A. 71), at which point Najawicz's counsel again objected to the giving of any new instructions. (J.A. 75.) Nevertheless, the judge summoned the jury at approximately 9:00 AM, and shortly thereafter instructed them on, among other things, the need for a unanimous verdict. (J.A. 76-79.)

Later that the same day, the Superior Court judge received a note from the jury foreman and summoned the attorneys for a conference — in open court rather than in chambers — that began at 3:36 PM, when the judge made the following remarks:

> I've received the following note signed by the foreperson. "Your Honor, it is my regret to inform you that we, the jurors, cannot come to a unanimous agreement on any of the charges against the Defendants."

> At this point, I have twice instructed them since the final instructions. The jury has been deliberating for five and a half days and I'm not sure that additional time will result in a change of this position, so at this point I'm going to declare a mistrial based on the fact that there's no unanimous verdict and discharge the jury, and we'll set the matter again at a time in point it's determined by the People whether they're going to continue to prosecute it.

(J.A. 79-80.) Although Carty's counsel began to speak,[3] the transcript reflects that the jury entered the courtroom one minute later at 3:37 PM, which apparently prevented her from completing her statement. (J.A. 80.) After the jury was present, the judge immediately declared a mistrial and adjourned the proceedings. (J.A. 81.)

Najawicz filed his motion to dismiss on July 12, 2011.[4] In his motion, Najawicz argued that the Double Jeopardy Clause precluded further prosecution because the judge failed to make a finding of manifest necessity before declaring a mistrial and, in any event, manifest necessity was not present. Additionally, Najawicz argued that the judge failed to weigh any of the numerous factors the United States Court of Appeals for the Third Circuit has instructed trial judges to weigh prior to declaring a mistrial based on a deadlocked jury, and contended that these factors did not support a mistrial.

For reasons not clear from the record, the judge failed to rule on Najawicz's dispositive motion until more than a year after it was filed. The judge issued an opinion denying the motion on September 7, 2012, less than a month before the date of the scheduled retrial of Najawicz and his co-defendants. In the September 7, 2012 Opinion, the judge recognized that he "did not use the words 'manifest necessity' . . . before declaring a mistrial," stated that he "carefully weighed the factors enumerated by the Third Circuit on the record before declaring a mistrial," and held "that there was manifest necessity to declare a mistrial." *People v. Najawicz*, Super. Ct. Crim. No. 425/2008 (STT), 2012 V.I. LEXIS 45, at *5 (V.I. Super. Ct. Sept. 7, 2012). Najawicz timely filed his notice of appeal on October 4, 2012, and — when the judge refused to stay his retrial pending appeal — filed a petition for writ of prohibition on October 8, 2012. This Court, in an October 10, 2012 Order, granted that petition and enjoined the judge from proceeding with the retrial until conclusion of this appeal. *See In re Najawicz*, S.Ct. Civ. No. 2012-0112, 2012 V.I. Supreme LEXIS 75 (V.I. Oct. 10, 2012).

---

[3] Specifically, Carty's counsel stated, "Can I just say that I have nothing to do with that — no, I better hold it. Sorry." (J.A. 80.)

[4] Although the parties did not include a copy of the July 12, 2011 motion to dismiss in the Joint Appendix, it is part of the record of *In re Najawicz*, S.Ct. Civ. No. 2012-0112, a related proceeding before this Court.

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

■ "The Supreme Court [has] jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." 4 V.I.C. § 32(a). Although the September 7, 2012 Opinion clearly does not adjudicate all issues in the underlying criminal matter, and is not among the orders in which a statutory right to an immediate interlocutory appeal exists, *see* 4 V.I.C. § 33(b)-(d), the United States Supreme Court has held that "pretrial orders rejecting claims of former jeopardy . . . constitute 'final decisions' " which qualify for an immediate appeal under the collateral order doctrine. *Abney v. United States*, 431 U.S. 651, 662, 97 S. Ct. 2034, 52 L. Ed. 2d 651 (1977). Therefore, we possess jurisdiction over Najawicz's appeal.[5]

Ordinarily, the standard of review for this Court's examination of the Superior Court's application of law is plenary, while findings of fact are reviewed for clear error. *St. Thomas-St. John Bd. of Elections v. Daniel*, 49 V.I. 322, 329 (V.I. 2007). "The question of whether 'manifest necessity' existed in the case before us is a mixed question of law and fact over which we exercise plenary review." *United States v. Rivera*, 384 F.3d 49, 55 (3d Cir. 2004) (citing *Townsend v. Sain*, 372 U.S. 293, 309 n.6, 83 S. Ct. 745, 9 L. Ed. 2d 770 (1963)). Nevertheless, an appellate court should not disturb a trial court's manifest necessity finding unless it has failed to exercise sound discretion, acted irrationally or irresponsibly, or otherwise acted in a manner which cannot be condoned. *Renico v. Lett*, 559 U.S. 766, 130 S.Ct. 1855, 1863, 176 L. Ed. 2d 678 (2010).

### B. Mistrial by Consent

In its September 7, 2012 Opinion, the Superior Court addressed Najawicz's manifest necessity claim on the merits. Yet the People argue in their appellate brief that Najawicz implicitly consented to a mistrial

---

[5] Najawicz initially also sought to appeal an October 4, 2012 Opinion in which the Superior Court denied his motion for judgment of acquittal. However, this Court, in an October 23, 2012 Order, dismissed this portion of the appeal for lack of jurisdiction. *See Richardson v. United States*, 468 U.S. 317, 326 n.6, 104 S. Ct. 3081, 82 L. Ed. 2d 242 (1984) (holding that claims that the government failed to introduce sufficient evidence of guilt prior to declaration of a mistrial "are no longer 'colorable' double jeopardy claims which may be appealed before final judgment.").

through his failure to object to the Superior Court's decision to declare a mistrial, as well as the fact that he had previously joined in a motion for mistrial, even though he later rescinded it. In other words, the People imply that it was not necessary for the Superior Court — or, on appeal, this Court — to reach the manifest necessity issue, since implicit consent to a mistrial would allow a retrial even in the absence of manifest necessity. *United States v. Dinitz*, 424 U.S. 600, 607-08, 96 S. Ct. 1075, 47 L. Ed. 2d 267 (1976). Najawicz, however, notes that the September 7, 2012 Opinion explicitly states that he objected to a mistrial, and that the Superior Court therefore clearly understood that he opposed declaration of a mistrial.

■ The People are correct that, if a defendant consents to a mistrial — and is not coerced into agreeing to a mistrial as a result of prosecutorial or judicial misconduct — a retrial is permitted even in the absence of manifest necessity. *Id.* This is because the protections afforded by the Double Jeopardy Clause — like all other constitutional rights — may be waived by the defendant, through his counsel. *See United States v. Blyden*, 930 F.2d 323, 326-27 (3d Cir. 1991) (citing *Jeffers v. United States*, 432 U.S. 137, 97 S. Ct. 2207, 53 L. Ed. 2d 168 (1977)); *see also United States v. Allick*, 386 Fed. Appx. 100, 104-05 (3d Cir. 2010) (unpublished) ("[O]ther courts of appeals have consistently held that the decision to request or consent to a mistrial is a strategic decision that ultimately rests with counsel.") (collecting cases). Thus, if a defendant consents to a mistrial, "it is presumed that [the] defendant has made the election to abandon the valuable right of being tried before a single tribunal." *State v. Copening*, 100 Wis. 2d 700, 303 N.W.2d 821, 826 (1981).

■ A waiver of this right may be expressed or implied, and "[t]he courts have given the same effect to an implied waiver as an express waiver," with "[b]oth effectively vitiat[ing] any double jeopardy bar to retrial." *State v. Tiger*, 972 S.W.2d 385, 394 (Mo. Ct. App. 1998) (collecting cases). Determining "whether the defendant requested or consented to a mistrial 'turns not on a mechanical formula, but on a careful analysis of the facts of each case.' " *Id.* (quoting *State v. Tolliver*, 839 S.W.2d 296, 299 (Mo. 1992)). Therefore, the relatively few courts to have considered the issue have viewed waiver as a factual question, and reviewed solely for clear error. *See, e.g., State v. Hunter*, 815 N.W.2d 518, 522 (Minn. Ct. App. 2012).

■ We agree that whether or not a defendant waived his protections under the Double Jeopardy Clause by consenting to a mistrial is a factual issue that we review for clear error. Here, the Superior Court explicitly found that "[Najawicz] made a timely objection to the declaration of a mistrial," and cited to page 7 of the transcript of the June 24, 2011 hearing as authority for that finding, 2012 V.I. LEXIS 45, where Najawicz's counsel explicitly said, "I do not join in the motion for a mistrial." (J.A. 69.) Thus, we hold that the Superior Court's factual finding that Najawicz objected to a mistrial is not clearly erroneous.[6] Consequently, Najawicz did not consent to the mistrial.

## C. Manifest Necessity for Mistrial

■ In the absence of a valid waiver, the Double Jeopardy Clause prohibits the government from trying a criminal defendant more than once for the same offense unless "manifest necessity" justifies discharge of the jury. *See Illinois v. Somerville*, 410 U.S. 458, 462, 93 S. Ct. 1066, 35 L. Ed. 2d 425 (1973). Yet "[t]he trial judge's decision to declare a mistrial when he considered the jury deadlocked . . . is accorded great deference by a reviewing court." *United States v. Wecht*, 541 F.3d 493, 505 (3d Cir. 2008) (quoting *Arizona v. Washington*, 434 U.S. 497, 509-10,

---

[6] But even if we were to treat waiver as a purely legal issue and apply a plenary standard of review, we would reach the same result. While Najawicz initially joined Carty's motion for a mistrial, the fact that he retracted the motion the next morning was sufficient to place the judge and the other parties on notice that his position on the matter had changed. *Compare United States v. Razmilovic*, 507 F.3d 130, 140-41 (2d Cir. 2007) (finding no waiver when defendant orally joined motion for mistrial but withdrew motion before judge discharged the jury) *with United States v. Goldstein*, 479 F.2d 1061, 1067 (2d Cir. 1973) (finding waiver when defendant orally moved for mistrial and failed to withdraw the motion before the judge declared a mistrial). Although the People are correct that Najawicz did not formally object when the judge announced that he would declare a mistrial, the record reflects that the Superior Court reconvened the proceedings at 3:36 PM on June 24, 2011, spoke 121 words — in which he read the note and announced that he was declaring a mistrial — and then brought in the jury at 3:37 PM and immediately excused the jurors and adjourned the proceedings. Under these circumstances, the decision to declare a mistrial, discharge the jury, and adjourn was so hasty that Najawicz — and all parties, for that matter — clearly lacked the opportunity to make a considered objection on the record. *See, e.g.*, *United States v. Jorn*, 400 U.S. 470, 487, 91 S. Ct. 547, 27 L. Ed. 2d 543 (1971) (plurality opinion); *Love v. Morton*, 112 F.3d 131, 138 (3d Cir. 1997) ("[W]e will not infer consent from defense counsel's silence unless there was some opportunity to object."); *Brock v. State*, 955 N.E.2d 195, 204 (Ind. 2011) ("Brock's failure to object cannot be taken as tacit consent to mistrial in this case because there was no opportunity to raise a contemporaneous objection.").

98 S. Ct. 824, 54 L. Ed. 2d 717 (1978)). However, "[i]f the record reveals that the trial judge has failed to exercise the 'sound discretion' entrusted to him, the reason for such deference by an appellate court disappears." *Renico*, 130 S. Ct. at 1864 (quoting *Arizona*, 434 U.S. at 510 n.28). Similarly, a trial judge's ruling is entitled to no deference if he "acts irrationally or irresponsibly" or "for reasons completely unrelated to the trial problem which purports to be the basis for the mistrial ruling . . . ." *Arizona*, 434 U.S. at 514 & 510 n.28 (citation omitted). Importantly, when a defendant files a motion to dismiss predicated on double jeopardy grounds at the trial level, it is the prosecution, and not the defendant, that bears heavy burden of proving the existence of manifest necessity. *Id.* at 505-06. This holds true even if the government did not move for a mistrial and it was the trial judge that declared a mistrial *sua sponte. See Colcloughley v. Johnson*, 115 A.D.2d 58, 499 N.Y.S.2d 686, 688 (N.Y. App. Div. 1986); *State v. Taylor*, 912 S.W.2d 183, 186 (Tenn. Crim. App. 1995).

### 1. Legal Standard

■ As a threshold matter, we must ascertain the legal standard that governs a manifest necessity determination. In their appellate briefs, Najawicz and the People both acknowledge that the United States Supreme Court has "clarified that the 'manifest necessity' standard 'cannot be interpreted literally,' and that a mistrial is appropriate when there is a 'high degree' of necessity," *Renico*, 130 S. Ct. at 1863 (quoting *Arizona*, 434 U.S. at 506), and recognize that a jury being unable to reach a verdict "has long been considered the 'classic basis' establishing such a necessity." *Blueford v. Arkansas*, 566 U.S. ___, 132 S. Ct. 2044, 2052, 182 L. Ed. 2d 937 (2012) (citation omitted). However, the parties also contend that a trial judge, in exercising his or her discretion to declare a mistrial as a result of a deadlocked jury, should be guided by the following factors:

(1) a timely objection by the defendant;
(2) the jury's collective opinion that it cannot agree;
(3) the length of jury deliberations;
(4) the length of the trial;
(5) the complexity of the issues presented to the jury;
(6) any proper communications between the judge and jury;

(7) the effects of exhaustion and the impact of coercion of further deliberations on the jury;

(8) whether the court provided counsel an opportunity to be heard;

(9) whether the court considered alternatives to a mistrial; and

(10) whether the court's decision was made after adequate reflection.

See Wecht, 541 F.3d at 506 (internal quotation marks and citations omitted). In its September 7, 2012 Opinion, the Superior Court made the following findings with respect to the ten Wecht factors:

> The record reflects that: (1) Defendant made a timely objection to the declaration of a mistrial; (2) the jury submitted two notes to the Court on two separate occasions that in substance indicated that the jurors could not collectively agree and were deadlocked; (3) the deliberations were over six full days in length; (4) the trial lasted about five weeks; (5) the matter was complex as it involved forty-four counts against three defendants; (6) the Court made proper communications with the jury by reciting a deadlock charge modified from the "Federal Jury Practice and Instructions" in accordance with the Third Circuit's recommendation; (7) the Court mitigated any possibility of coercion of further deliberations by giving the recommended charge and specifically avoided the coercive language present in a traditional "Allen Charge"; (8) the Court provided counsel with the opportunity to be heard before giving the deadlock instruction; (9) after the jury indicated a second time that it was deadlocked, the Court considered affording the jury additional time to deliberate, but decided against this approach as the jury had already been in deliberations for several days; and (10) the declaration of a mistrial was made upon adequate reflection after considering the number of times the jury had been instructed and the length of deliberations.

2012 V.I. LEXIS 45 at *3-4 (footnotes omitted).

■ We do not agree with the parties that Wecht — a case that originated in the Western District of Pennsylvania — binds the Superior Court. Although we previously instructed that "decisions rendered by the Third Circuit . . . are binding upon the Superior Court even if they would only represent persuasive authority when this [C]ourt considers an issue," In re People of the V.I., 51 V.I. 374, 389 n.9 (V.I. 2009), we have made this

statement in the context of decisions the Third Circuit rendered while serving as the *de facto* court of last resort in the Virgin Islands. For instance, the case we found binding on the Superior Court in *In re People — Gov't of the V.I. v. Scotland*, 614 F.2d 360, 17 V.I. 623 (3d Cir. 1980) — arose from a prosecution in the District Court of the Virgin Islands involving purely local criminal charges, during the period when the District Court possessed exclusive jurisdiction over such prosecutions. In fact, every other Third Circuit decision which we have characterized as being binding on the Superior Court can be traced to a case where the Third Circuit had exercised its power as the final arbiter of Virgin Islands local law.[7]

The reasons for this limitation should be clear. It will often be the case that when a federal appeals court issues a decision in a purely federal criminal prosecution it will rely on authorities not applicable to local courts. For example, the *Wecht* court did not conclude that these ten factors represented a constitutionally required balancing test; it based its holding that district courts within the Third Circuit should follow the *Wecht* procedure based on Federal Rule of Criminal Procedure 26.3 (from which it drew the last three factors) and Comment 9.06 of the Third Circuit Model Criminal Jury Instructions (which inspired the first seven factors). But Federal Rule of Criminal Procedure 26.3 is not applicable to Superior Court proceedings through Superior Court Rule 7 because it is inconsistent with a Virgin Islands statute that imposes lesser requirements,[8] *see Blyden v. People*, 53 V.I. 637, 659 (V.I. 2010), and this Court has previously indicated that the Third Circuit Model Jury

---

[7] *See, e.g., People v. Murrell*, 56 V.I. 796, 808 (V.I. 2012) (citing *United States v. Ubiles*, 224 F.3d 213 (3d Cir. 2000)); *Phipps v. People*, 54 V.I. 543, 548-49 (V.I. 2011) (citing *Gov't of the V.I. v. Smith*, 949 F.2d 677, 681, 27 V.I. 332 (3d Cir. 1991)). Although we recognize that, in *Halliday v. Footlocker Specialty, Inc.*, 53 V.I. 505, 510-11 (V.I. 2010), we characterized *Poulis v. State Farm Fire and Cas. Co.*, 747 F.2d 863 (3d Cir. 1984) as binding on the Superior Court even though that decision arose out of an appeal from the United States District Court for the Western District of Pennsylvania, the Third Circuit had explicitly extended *Poulis* to the local Virgin Islands legal system. *See, e.g., Horner Equipment Int'l, Inc. v. Seascape Pool Center, Inc.*, 884 F.2d 89, 93 (3d Cir. 1989) (reversing Appellate Division for failure to apply the *Poulis* factors).

[8] *Compare* FED. R. CRIM. P. 26.3 ("Before ordering a mistrial, the court must give each defendant and the government an opportunity to comment on the propriety of the order, to state whether that party consents or objects, and to suggest alternatives.") *with* 5 V.I.C. § 3633 ("The court may discharge a jury without prejudice to the prosecution in case of accident or

Instructions are, at best, advisory. *See Fontaine v. People*, 56 V.I. 571, 595 n.19 (V.I. 2012). We can discern no rational reason to require the Superior Court to follow such a decision as *binding* precedent on Virgin Islands local courts.

█ Having determined that *Wecht* only represents persuasive authority, we must still determine whether to adopt the *Wecht* procedure, or apply some other legal standard. As noted above, the Third Circuit drew the *Wecht* factors from two authorities that do not specifically apply to Virgin Islands local courts. Moreover, while we agree that application of the *Wecht* factors are helpful in the application of the manifest error determination, we believe that rigid adherence to the *Wecht* procedure is not fully consistent with the most recent guidance from the United States Supreme Court, which has emphasized that no particular factor or set of factors — even those it itself identified in prior decisions — is constitutionally significant.[9] *See Renico*, 130 S. Ct. at 1866 (noting that three factors first set forth in *Arizona v. Washington* are not "a constitutional test that determines whether a trial judge has exercised sound discretion in declaring a mistrial.") (internal citation, quotation marks, and brackets omitted).

Our conclusion is further bolstered by the parties' arguments in their briefs in this matter. Manifest necessity "abjures the application of any mechanical formula," *Somerville*, 410 U.S. at 462, and "because these cases turn on their own facts they 'escape meaningful characterization.' " *United States v. Sloan*, 36 F.3d 386, 394 (4th Cir. 1994) (quoting *Somerville*, 410 U.S. at 464). Both parties, however, have relied on *Wecht* as an excuse to "review the record in isolated and unrelated component parts" and "dissect[] the record" with respect to "the [trial] court's consideration of certain factors and failure to consider others" — precisely the sort of analysis the United States Supreme Court has proscribed. *United States v. Melius*, 123 F.3d 1134, 1139 n.4 (8th Cir. 1997).

█ To the extent it is necessary to formulate a "test" in the manifest necessity context, we believe it would be a simple one: a trial court must

---

calamity, or because there is no probability of the jurors agreeing, and the reason for the discharge shall be entered in the minutes.").

[9] In fact, even the *Wecht* court acknowledged that its ten-factor test was not constitutionally required. 541 F.3d at 504.

make a sound decision when declaring a mistrial, and an appellate court must review the entire record to "analyz[e] whether the exercise of discretion by the trial judge in granting a mistrial was sound as opposed to irrational or irresponsible." *Gilliam v. Foster*, 75 F.3d 881, 894 (4th Cir. 1996). Consistent with guidance from the United States Supreme Court, the amount of deference given to the trial judge must vary based on the circumstances that gave rise to the mistrial declaration, with a trial judge receiving the greatest amount of deference from an appellate court when declaring a mistrial based on a deadlocked jury, *Renico*, 130 S. Ct. at 1864, and the least amount of deference when "the basis for the mistrial is the unavailability of critical prosecution evidence, or when there is reason to believe that the prosecutor is using the superior resources of the State to harass or to achieve a tactical advantage over the accused." *Arizona*, 434 U.S. at 508. And perhaps most importantly, we must be guided by the maxim that "close cases regarding the propriety of a mistrial 'should be resolved in favor of the liberty of a citizen.' " *Love v. Morton*, 112 F.3d 131, 138 (3d Cir. 1997) (quoting *United States ex rel. Russo v. Super. Ct. of N.J. Law Div.*, 483 F.2d 7, 17 (3d Cir. 1973)). *See also Downum v. United States*, 372 U.S. 734, 738, 83 S. Ct. 1033, 10 L. Ed. 2d 100 (1963) ("We resolve any doubt 'in favor of the liberty of the citizen, rather than exercise what would be an unlimited, uncertain, and arbitrary judicial discretion.' " (quoting *United States v. Watson*, 28 F. Cas. 499, 500 (S.D.N.Y. 1868) (No. 16,651)); *Rivera*, 384 F.3d at 56 (emphasizing importance of "consider[ing] . . . the constitutional implications attendant to the declaration of a mistrial"). This is because "as a general rule, the prosecutor is entitled to one, and only one, opportunity to require an accused to stand trial," for "a second prosecution may be grossly unfair," in that "[i]t increases the financial and emotional burden on the accused, prolongs the period in which he is stigmatized by an unresolved accusation of wrongdoing, and may even enhance the risk that an innocent defendant may be convicted." *Arizona*, 434 U.S. at 503-05. Thus, "in the final analysis, the judge must always temper the decision whether or not to abort the trial by considering the importance to the defendant of being able, once and for all, to conclude his confrontation with society through the verdict of a tribunal he might believe to be favorably disposed to his fate." *United States v. Jorn*, 400 U.S. 470, 486, 91 S. Ct. 547, 27 L. Ed. 2d 543 (1971).

■■■ We emphasize that, in articulating this standard, we do not intend to imply that the Superior Court is prohibited from following the *Wecht* factors. Although no legal authority *requires* that Superior Court judges apply Federal Rule of Criminal Procedure 26.3 and the pertinent provisions of the Third Circuit's model criminal jury instructions, we note that there is also no legal authority that prohibits a judge from nevertheless applying these higher standards. Thus, while neither the United States Constitution nor Virgin Islands law mandates that a judge mechanistically apply the *Wecht* factors before declaring a mistrial, it is clear that a judge who seeks input from the parties, considers and applies other alternatives, makes explicit findings on the record, and is otherwise guided by *Wecht* and similar decisions will be far less likely to commit reversible error than a judge who proceeds to act *sua sponte* without making any contemporaneous findings — which, while not constitutionally required, is mandated by Virgin Islands law. *See* 5 V.I.C. § 3633 ("The court may discharge a jury without prejudice to the prosecution . . . because there is no probability of the jurors agreeing, and the reason for the discharge shall be entered in the minutes."). Therefore, we encourage trial judges to nevertheless consider the *Wecht* or similar factors when deciding how to exercise their discretion to declare a mistrial.

### 2. *The Superior Court's Manifest Necessity Findings and "Whip-Saw"*

Unquestionably, if we accepted Najawicz's invitations to simply apply a checklist with respect to "the [trial] court's consideration of certain factors and failure to consider others" or to "review the record in isolated and unrelated component parts," *Melius*, 123 F.3d at 1139 n.4, we would — at an absolute minimum — find that the Superior Court acted improvidently. The Superior Court knew Najawicz opposed a mistrial. This was not an emergency situation where the Superior Court had to take quick action — nothing prevented the judge from calling a recess, directing the parties to reflect on the situation, and reconvening after the weekend. Yet the Superior Court nevertheless declared a mistrial *sua sponte*, making relatively limited findings on the record and without polling the jury or providing any of the parties with a right to be heard on the issue. And the judge should also have been aware that he had informed the jurors and the parties that he was going on vacation for the "long

weekend"[10] and that taking such abrupt action at 3:36 PM on the preceding Friday afternoon may cause the parties to question whether the judge declared the mistrial for an improper purpose.

The actions the Superior Court took after declaring a mistrial, when viewed in isolation, similarly do not reflect well upon its decision. The unexplained, nearly 15 month delay in ruling on Najawicz's motion to dismiss, while continuing to deal with other matters related to the retrial, represents a gross lack of concern for Najawicz's double jeopardy rights. *See, e.g., Gilliam*, 75 F.3d at 901 (disapproving of fact that trial judge "never evinced any awareness that the grant of a mistrial might implicate or deprive Petitioners of their constitutional right to have the empaneled jury decide their guilt" and "at no point . . . allude[d] to the Fifth Amendment, the Double Jeopardy Clause, or . . . manifest necessity . . . ."); *Brady v. Samaha*, 667 F.2d 224, 230-31 (1st Cir. 1981) ("With the record barren of any hint whatsoever that the judge was aware of the double jeopardy implications of his decision, we cannot agree that his discretion was sound."). When the Superior Court finally ruled on the motion, the resulting September 7, 2012 Opinion identified inapplicable legal standards,[11] included multiple

---

[10] Although not raised as an issue by Najawicz on appeal, it is not clear to us why the judge felt it necessary to notify the jury of his vacation plans. We note that at least one appellate court has implied, in dicta, that a jury indicating "deadlock" or taking other action shortly after being informed of a judge's vacation plans could constitute evidence that the jury may feel unduly pressured to terminate deliberations. *See Mize-Kurzman v. Martin Cmty. Coll. Dist.*, 202 Cal. App. 4th 832, 136 Cal.Rptr.3d 259, 288 (2012) (holding no prejudice in judge informing jury of his vacation in part because "the jury never indicated it was 'deadlocked' or gave any other indication that it was feeling 'pressured' "). However, based on the record before us, we can find no evidence that the jury was influenced by the judge's announcement of his vacation plans or that the judge manufactured the situation that led to the mistrial or otherwise encouraged the foreman to submit the deadlock note or the jurors to sign non-unanimous verdict forms.

[11] In a section titled "Analysis," the September 7, 2012 Opinion states that the decision to declare a mistrial receives "[t]he highest degree of deference," that the decision is vested in the "sound discretion" of the trial court, that there was "sufficient evidence that the jurors were deadlocked," and that its decision to declare a mistrial "does not amount to reversible error." 2012 V.I. LEXIS 45, at *2-7. But abuse of discretion, sufficient evidence, clear error, deference, reversible error, and similar concepts are standards applicable to appellate courts, not trial courts. *See Fontaine v. People*, 56 V.I. 571, 590 n.12 (V.I. 2012). "These appellate standards of review operate as an overlay on the standard that the trial judge was required to use in evaluating [a defendant's] motions." *United States v. Josleyn*, 206 F.3d 144, 151 (1st Cir. 2000).

incorrect[12] or inconsistent factual findings,[13] and addressed Najawicz's argument that the judge's plan to go on a vacation for the "long weekend" may have influenced the mistrial declaration in a highly cursory manner.[14]

---

[12] For instance, the Opinion states that the Superior Court declared a mistrial "[a]fter making findings on the record" and that it "carefully weighed the factors enumerated by the Third Circuit on the record before declaring a mistrial," 2012 V.I. LEXIS 45 at *5, but the transcript reflects that the judge immediately declared a mistrial after reading the note to counsel without referencing double jeopardy or identifying or discussing all of the ten *Wecht* factors on record. (J.A. 79-80.) Additionally, the Opinion states that "the [jury] deliberations were over six full days in length," 2012 V.I. LEXIS 45 at *4, while the record reflects that the jury had "been deliberating for five and a half days." (J.A. 80.) Moreover, the September 7, 2012 Opinion states that "[a]t approximately 3:36 p.m. . . . the Court *received* another note from the jury foreperson." 2012 V.I. LEXIS 45 at *1 (emphasis added). Although the trial transcript does not disclose when the judge received the note, the factual finding that the note was "received" at "approximately 3:36 p.m." is likely incorrect in light of the logistics of summoning attorneys for four parties to court.

[13] For example, the Opinion states that "[t]he record reflects that . . . the jury submitted two notes to the Court on two separate occasions that in substance indicated that the jurors could not collectively agree and were deadlocked." 2012 V.I. LEXIS 45 at *3. But the judge only received one note from the jury foreman, *see United States ex rel. Webb v. Court of Common Pleas*, 516 F.2d 1034, 1043-44 (3d Cir. 1975), on June 24, 2011; the jury's June 23, 2011 correspondence consisted of a statement that they had reached a verdict, along with non-unanimous verdict forms. (J.A. 60.) Importantly, when the Superior Court received the June 23, 2011 correspondence, it expressly declined to interpret the verdict forms as proof of deadlock. (J.A. 70-72.) The Opinion, however, does not even mention — let alone attempt to explain — the prior inconsistent finding.

In identifying this inconsistency, we do not intend to imply that a judge, after making an oral finding, could not, after further reflection, conclude that it was erroneous, particularly in light of subsequent developments. *Cf. Island Tile & Marble, LLC v. Bertrand*, 57 V.I. 596 (V.I. Nov. 7, 2012). Rather, we raise this issue to emphasize that, if a judge realizes that he has had a change of mind on an issue, the written opinion should — at an absolute minimum — acknowledge the change, both as a courtesy to the parties and to enable appellate review by this Court.

[14] In its September 7, 2012 Opinion, the Superior Court simply stated, in a footnote without further elaboration, that "[Najawicz]'s assertion that the Court acted too swiftly in declaring a mistrial 'out of a concern for travel plans' is unsupported by the record." 2012 V.I. LEXIS 45, at *7 n.20. But this was not a case where a party set forth an argument that "call[ed] into question the [actions or motivation] of a sitting judge of the Superior Court without any basis whatsoever . . . ." *Benjamin v. AIG Ins. Co. of P.R.*, 56 V.I. 558, 568 n.6 (V.I. 2012). In addition to the record reflecting that, on June 22, 2011, the judge informed the jury that he "ha[s] travel plans for a long weekend" in which he would "be out of the territory Monday and Tuesday of next week," (J.A. 56-57), Najawicz's motion relied on an apparently untranscribed conference where the "trial judge informed counsel that he was preparing to go on vacation . . . Friday, June 24, 2011." (Mot. 14.) While we have held that unsworn representations of counsel as to factual matters are not themselves evidence, *see Henry v. Dennery*, 55 V.I. 986, 994

**■** But the United States Supreme Court has unambiguously disavowed application of any precise formula, or focusing only on certain components of the record. Rather, the United States Supreme Court has instructed that we review the record as a whole and, in light of the totality of the circumstances, ascertain whether the trial judge exercised sound discretion. *Renico*, 130 S. Ct. at 1863. By mandating that we undertake such review, the United States Supreme Court has vested us with the obligation to permit retrial if any basis in the record exists to support a finding of manifest necessity, even if the trial court's analysis was faulty. *See, e.g., United States v. Balentine*, 569 F.3d 801, 805 (8th Cir. 2009); *People v. Thompkins*, 121 Ill. 2d 401, 521 N.E.2d 38, 49, 117 Ill. Dec. 927 (Ill. 1988); *see also* V.I.S.CT.R. 4(i) ("No error or defect in any ruling or order or in anything done or omitted by the Superior Court . . . is ground for granting relief or reversal on appeal where its probable impact . . . is sufficiently minor so as not to affect the substantial rights of the parties.").

**■** Applying these principles to this case, it is clear that the Superior Court was confronted with a situation that constituted the "very

---

(V.I. 2011), we can find no authority for the proposition that an attorney may not rely on representations a Superior Court judge made at an untranscribed conversation or conference. *See* SUPER. CT. R. 6 (providing that stenographic records of Superior Court proceedings are required only if requested by a party or a judge).

Nevertheless, while these untranscribed or off-the-record conversations may have been known to the parties and the Superior Court judge, they are a complete mystery to this Court because Najawicz failed to comply with Supreme Court Rule 10(c) by "prepar[ing] a statement of the evidence or proceedings from the best available means." Thus, this Court is ultimately unable to review any of Najawicz's "long weekend" argument as part of this appeal, since we cannot substantiate any of Najawicz's factual claims, including his claim that the judge "departed the courthouse for Cyril E. King Airport to catch a flight off island just one (1) hour after declaring the mistrial." (Appellant's Br. 16.) In fact, since the judge only stated on the record that he "ha[s] travel plans for a long weekend" in which he would "be out of the territory Monday and Tuesday of next week," (J.A. 56-57), this Court has no way of knowing if the judge's flight was even on Friday afternoon or evening as opposed to sometime on Saturday or Sunday, or even if he was traveling by air. Therefore, while the Superior Court impeded this Court's appellate review by dismissing Najawicz's claim out of hand without any elaboration or findings, Najawicz has frustrated our review to an even greater extent through his failure to comply with Rule 10(c). Consequently, we must assume that the Superior Court is correct when it states that travel plans did not influence its mistrial decision. *See Thomas v. Cannonier*, S.Ct. Civ. No. 2007-0042, 2009 V.I. Supreme LEXIS 33, at *5 (V.I. Apr. 7, 2009) (unpublished) (holding, in absence of complete record provided by appellant, that "[w]e cannot assume that the trial court erred, but instead presume that the trial court's judgment is 'valid and in conformity with the law.'") (quoting *Abdul-Akbar v. Watson*, 4 F.3d 195, 205 (3d Cir. 1993) and collecting cases).

extraordinary and striking circumstances demonstrating a high degree of necessity that the trial come to a premature end." *Ex Parte Rodriguez*, 366 S.W.3d 291, 297 (Tex. App. 2012) (citing *Arizona*, 434 U.S. at 505-06). While Najawicz would prefer that we focus solely on the events that occurred in the afternoon on June 24, 2011, we cannot ignore that, prior to declaring a mistrial, the jurors had deliberated for five and a half days, after hearing evidence in a month-long trial concerning difficult subject matter involving three defendants and dozens of charges. Although the United States Supreme Court has repeatedly rejected prescribing either a minimum (or maximum) period of time in which jurors must deliberate before a judge may (or must) declare a mistrial, *Renico*, 130 S. Ct. at 1864, these factors — particularly when combined with the incomplete verdict forms and the jury foreman's deadlock note — establish powerful, compelling evidence to support the Superior Court's ultimate conclusion that the jury, despite its best efforts, simply could not reach a unanimous verdict.[15] *Blueford*, 132 S. Ct. at 2052.

Perhaps most importantly, we cannot disregard what transpired at the sidebar conference the morning of June 24, when Najawicz's counsel opposed issuing a supplemental jury instruction in response to the non-unanimous verdict forms:

> Your Honor, I object to any further instructions to the jury on the forms of verdict for the record. I think that the jury has been adequately instructed.
>
> *To go on to further instruct, I think would be error to do so.* I believe that, we at this juncture now have a jury that is confused by the number and the sheer amount of charges that were made in this case because of the fact that the charges were, the defendants were overcharged and in particular with respect to Mr. Najawicz. . . . *I don't believe that any instruction at this point should be given and it would constitute reversible error.*

---

[15] Immediately before declaring a mistrial, the judge stated that "[t]he jury has been deliberating for five and a half days and I'm not sure that additional time will result in a change of this position, so at this point I'm going to declare a mistrial based on the fact that there's no unanimous verdict and discharge the jury, and we'll set the matter again at a time in point it's determined by the People whether they're going to continue to prosecute it." (J.A. 80.) Although the judge did not use the magic words "manifest necessity," it is clear that the judge intended to make a manifest necessity finding.

(J.A. 66-67 (emphases added).) When Carty orally moved to unseal the verdict forms, to alter some aspects of the proposed instruction, and for a mistrial, Najawicz's counsel explicitly stated, "I do not join in the motion for a mistrial." (J.A. 69.) After the Superior Court began to address Carty's motions, Najawicz's counsel interrupted the judge and made the following statement:

> If I may, I think that the jury has spoken inartfully. *What the jury has told the Court is that they have deliberated over a number of days and in deliberating over these days, the jury has said inartfully it is hopelessly deadlocked.* It doesn't have to say deadlock in order to be deadlocked. I think that is what the jury has told the Court.

(J.A. 71 (emphasis added).) And when the Superior Court implicitly denied the motion for mistrial by stating that it would instruct the jury and completed the process of altering the proposed instruction in response to feedback from counsels for Carty and the People, Najawicz's counsel again placed an objection on the record:

> I would like to make sure that my objection is noted. I object to giving any instructions. I think that it does not matter what the Court intends and I know that the Court did not intend to coerce anyone, but I think that giving of the instruction at this stage would almost suggest coercion, no matter what anyone intended and I think that Mr. Najawicz, on behalf of him, it is my duty to object and I do object.

(J.A. 75.) Shortly thereafter, the judge instructed the jury, and deliberations resumed until the foreman submitted the deadlock note that resulted in the *sua sponte* declaration of the mistrial later that afternoon.

 Although a deadlocked jury represents the classic example of manifest necessity for a mistrial, the United States Supreme Court has held that manifest necessity also exists if a judge commits an obvious error that would result in reversal on appeal. *Somerville*, 410 U.S. at 464. Najawicz's position at the June 24, 2011 hearing bears similarities to *United States v. Elliot*, 463 F.3d 858 (9th Cir.), *cert. denied*, 549 U.S. 1021, 127 S. Ct. 568, 166 L. Ed. 2d 412 (2006), a case where the trial judge discovered that the defendant's attorney also represented a key witness who had already testified. Although the defendant repeatedly refused to waive his right to conflict-free representation, he

simultaneously objected to a mistrial and, after the judge ultimately declared a mistrial, sought to preclude a retrial due to the absence of manifest necessity. Both the district court, as well as the United States Court of Appeals for the Ninth Circuit, held that the defendant's "attempt to have it both ways" itself established manifest necessity for a mistrial:

> We agree with the assessment of the district court that [the defendant] was trying to have it both ways. If the trial continued and [the defendant] was found guilty, he would have had a built-in issue for appeal, namely, that he had been denied his right to conflict-free representation. Conversely, if a mistrial was declared he would, as he does now, claim that there was no conflict that necessitated a mis trial [sic]. This court has warned that we should be aware of the trial court's prospects of being 'whip-sawed' by assertions of error no matter which way it rules. This was exactly the prospect facing the district court in this case.

*Elliot*, 463 F.3d at 867 (internal citations, brackets, and quotation marks omitted).

As in *Elliot*, Najawicz's conduct clearly placed the Superior Court in the position of being "whip-sawed." In the event the jury arrived at a guilty verdict after the supplemental instruction, Najawicz would argue on appeal — as he did at the sidebar conference — that the jury had spoken "inartfully" through the non-unanimous verdict forms and had, in fact, been "hopelessly deadlocked," (J.A. 71), with the supplemental instruction coercing it into convicting him. Conversely, if the judge agreed with Najawicz that the jury was hopelessly deadlocked and declared a mistrial at that point, or if — as actually occurred — the jury still failed to reach a verdict after being given the instruction, Najawicz would — as he does now — argue that a mistrial was declared in the absence of manifest necessity and over his objection. This Court has repeatedly precluded appellants from benefiting from this sort of conduct. *See, e.g., Fontaine*, 56 V.I. at 583-84 (refusing to review sufficiency of the evidence for voluntary manslaughter conviction when defendant obtained jury instruction for voluntary manslaughter as a lesser-included offense to first degree murder based on argument that witness's testimony established the "sudden quarrel or heat of passion" element, and then arguing on appeal that the same testimony, "no matter how interpreted, could only establish a premeditated killing.").

Moreover, in *Elliot*, defense counsel refused to take a position as to whether an actual or potential conflict existed. But in this case, Najawicz vehemently argued both that (1) the supplemental instruction constituted reversible error, and (2) the jury was hopelessly deadlocked. In fact, this Court cannot discern how Najawicz's adamant characterization of the jury as "hopelessly deadlocked" can in any way be reconciled with simultaneously opposing *both* a mistrial and the giving of any additional instructions, since declaring a mistrial or issuing supplemental instructions are the two actions a trial court traditionally employs when faced with a hopelessly deadlocked jury. But despite clearly having an opportunity to do so — given that he felt free to interrupt the trial judge at certain points — Najawicz never proposed any alternate remedies. Thus, we are at a complete loss as to what action by the Superior Court would have represented an acceptable response to Najawicz in light of his belief that the jury was "hopelessly deadlocked" and his unconditional opposition to a mistrial or any additional instructions.

█ Of course, we recognize that *Elliot* is distinguishable on one point: the conflict-of-interest in *Elliot* was created by defense counsel, whereas neither Najawicz nor his counsel was responsible for the jury submitting non-unanimous verdict forms. However, the United States Supreme Court has instructed that it is the role of an appellate court, when reviewing a manifest necessity determination, to decide whether the trial court "exercised sound discretion in *declaring a mistrial*." *See Renico*, 130 S. Ct. at 1866 (emphasis added) (citation omitted). Thus, while we must consider the entire record, ultimately we do so for the purposes of determining whether the Superior Court acted responsibly in terminating the trial.

Therefore, even if we were to set aside Najawicz's attempt to have it both ways, his counsel's position at the morning sidebar conference on June 24, 2011, may explain why the Superior Court acted in such an abrupt manner after it received the jury foreman's note. Carty and Miller had already placed their desire for a mistrial on the record, and while it does not appear that the People ever formally took a position on the matter, its counsel certainly had more than ample opportunity to do so when Carty moved for a mistrial at the sidebar conferences that occurred on the evening of June 23 and the morning of June 24. The Superior Court knew that Najawicz, although opposing a mistrial for some unspecified reason, had argued earlier that morning that the non-unanimous verdict

338

forms reflected that the jury was "hopelessly deadlocked." (J.A. 71.) Since the foreman's note later that afternoon explicitly stated that the jurors could not reach a unanimous verdict, the judge reasonably could have concluded that Najawicz's position would not have changed, given that the note significantly bolstered that position.[16] Due to the fact that the initial supplemental instruction had been ineffective, as well as Najawicz's opposition to the jury receiving any additional instructions, the Superior Court may have believed that a mistrial represented the only available option, particularly in light of Najawicz's failure to identify any remedy for the "hopelessly deadlocked" jury beyond the two options that he opposed.[17] In other words, while the Superior Court's declaration of a *sua sponte* mistrial may seem irrational if its decision is viewed in isolation, the events of the morning sidebar conference on June 24, 2011 — when combined with the non-unanimous verdict forms, the foreman's note, the complexity of the charges, as well as the length of both the trial and deliberations — make the Superior Court's actions appear reasonable. Under these circumstances, we simply cannot conclude that the Superior Court, in finding that the jurors had been deliberating for five and a half days, that additional time would not make a difference, and that he would declare a mistrial due to their inability to reach a unanimous verdict, "act[ed] irrationally or irresponsibly" or "for reasons completely unrelated to the trial problem which purports to be the basis for the mistrial ruling." *Arizona*, 434 U.S. at 514 & 510 n.28 (citation omitted).

Accordingly, we affirm the ultimate result reached by the Superior Court: that Najawicz's motion to dismiss be denied because manifest necessity permits a retrial. In reaching this decision, we must emphasize, in the strongest terms, that the Superior Court's consideration of both the initial mistrial declaration and Najawicz's motion to dismiss are not ideal.

---

[16] In fact, since the September 7, 2012 Opinion — contrary to the judge's contemporaneous oral findings — characterizes the non-unanimous verdict forms as evidence of deadlock, it seems likely that the foreman's note persuaded the judge to change his mind and adopt Najawicz's position that the jury was hopelessly deadlocked.

[17] In his appellate brief, Najawicz implies that the Superior Court could have *sua sponte* polled the individual jurors prior to declaring a mistrial. However, since it was *Najawicz* that had insisted at the morning sidebar conference that the jury was "hopelessly deadlocked," the judge could have reasonably inferred that polling the jury was not necessary. *See also Renico*, 130 S. Ct. at 1866 (explaining that no particular action by trial judge is constitutionally required prior to declaring a mistrial based on manifest necessity).

As explained above, our standard of review in this case is a highly deferential one. But had Najawicz not so heavily insisted at the morning sidebar conference that the jury was "hopelessly deadlocked" and that any supplemental instruction would constitute "reversible error," (J.A. 67, 71), this could have very well been one of the rare cases in which reversal would have been required notwithstanding our deferential review, since "close cases regarding the propriety of a mistrial should be resolved in favor of the liberty of a citizen." *Love*, 112 F.3d at 138 (internal quotation marks and citation omitted). Therefore, although we affirm the September 7, 2012 Opinion in result, we do so only because we are duty bound to consider the entire record and the totality of the circumstances, even if the Superior Court itself failed to do so.

## III. CONCLUSION

For the foregoing reasons, we affirm the Superior Court's September 7, 2012 Opinion, and remand the case so that the Superior Court may proceed with a retrial in the event the People desire to continue to prosecute Najawicz.